JOSEPH J. KELLY, Plaintiff-Appellant and Cross-Appellee, v. HCI HEINZ CONSTRUCTION COMPANY, Defendant-Appellee and Cross-Appellant (Pleasant Ridge Masonry, Inc., Defendant-Appellee).

Fourth District   No. 4—95—0612

Argued February 14, 1996.—Opinion filed July 19, 1996.—Rehearing denied August 19, 1996.

Mark A. Schindler (argued), and Peter F. Ferracuti, both of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellant.

James T. Foley (argued), of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellee HCI Heinz Construction Company.

William F. Costigan (argued) and John Casey Costigan, both of Costigan & Wollrab, P.C., of Bloomington, for appellee Pleasant Ridge Masonry, Inc.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Plaintiff, Joseph J. Kelly, a bricklayer, was injured when the scaffold on which he was working collapsed. Kelly brought suit against HCI Heinz Construction Company (Heinz), the general contractor, under the Structural Work Act (Act). 740 ILCS 150/0.01 *et seq.* (West 1992). Heinz in turn filed a third-party action against Kelly's employer, Opperman Construction Company (Opperman), the subcontractor in charge of masonry. Kelly also sued Pleasant Ridge Masonry, Inc. (Pleasant Ridge), with which Opperman had subcontracted to provide scaffolding and equipment and supervise the bricklayers and laborers. Pleasant Ridge then brought a third-party action against Opperman.

On the day of trial, Opperman was dismissed out when it unilaterally waived its workers' compensation lien against any judgment. 820 ILCS 305/5(b) (West 1992). At the conclusion of the trial, the jury found Pleasant Ridge not liable, but found Heinz liable and set damages in the amount of $82,500. The award included $23,400 for past medicals and medically related expenses, $21,600 for disability and disfigurement, $25,000 for past and future pain and suffering, and $12,500 for past and future lost wages. Kelly appeals the verdicts against both defendants. Heinz cross-appeals. We affirm the jury verdict in favor of Pleasant Ridge. We affirm the jury's verdict that Heinz was liable, but reverse and remand for a new trial on the amount of damages.

On August 7, 1990, Kelly was working on a Wal-Mart store project in Pontiac, Illinois. The construction was being done with Morgen scaffolding, which consists of towers strung together along a wall, connected by braces. The towers support the platform on which the bricklayers stand. The platform moves between the top and bottom of the towers, but a set of braces must be removed in order to move the platform more than a few feet.

Laborers, not bricklayers, were assigned the duty of raising and lowering the platforms. After lunch on August 7, the only laborer working the platform in question was Danny Bellott, an Opperman employee. Bellott had worked for a little over a month before the accident but had never been the only laborer on a platform before. When the crew returned after lunch, the top set of braces was off. The platform had to be lowered, and when it reached the point where the middle braces had to be removed in order to continue descent, Bellott removed them without replacing the top braces. After the platform descended further, Bellott attempted to remove the bottom set of braces and the scaffold collapsed. Kelly fell to the ground and was injured.

Bellott testified he never had anything to do with operating a Morgen scaffolding until the Wal-Mart job, although he had gone up on the scaffolding at the previous job "once in awhile." There were never any safety meetings at the site, Bellott never received any written instructions on the Morgen scaffolding and was never given any training how to operate it. He testified he did not know that when the middle braces were taken off they should be put back on top, although he was impeached with his deposition.

Dave Viebrock was Heinz' superintendent on the project. Under the contract between Wal-Mart and Heinz, Viebrock was responsible for monitoring safety and for accident prevention. The contract provided that Heinz was responsible for "initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract"; "tak[ing] reasonable precautions for safety of, and [providing] reasonable protection *** to: (1) employees on the Work and other persons who may be affected thereby"; complying with safety-related "laws, ordinances, rules, regulations and lawful orders of public authorities"; and was not to "permit employment of unfit persons or persons not skilled in tasks assigned them."

Perry Augsburger, an employee of Pleasant Ridge, was a working foreman on the site. He acknowledged Viebrock relied on him for the safety and use of the scaffolding, but noted that if Viebrock saw problems he would bring them to Augsburger's attention. Augsburger admitted he had responsibility for providing training on the Morgen scaffolding, and he did that by hands-on instruction, rather than conducting "classes." He thought Bellott had lowered the platform on the previous job, but admitted there "could be a chance [he] didn't talk one on one with" Bellott about how to operate the scaffold. He did not see the scaffolding at the time of the accident because he was cutting a block on the other side of the wall. Augsburger testified he would "have a hard time believing that anybody could understand a scaffold could stand up without cross braces."

Plaintiff's expert testified Bellott was not properly trained and there was not a competent person supervising.

■ Both Kelly and Heinz argue that they are entitled to judgment *n.o.v.* or to a new trial. We reject those arguments as they apply to the question of liability. Based on the contract and Augsburger's testimony, the jury could have found that Heinz had charge of the work and wilfully violated the Act in that it knew of the dangerous condition or in the exercise of ordinary care could have discovered the situation. Although Pleasant Ridge's employee, Augsburger, was a foreman on the project, he was a working foreman with duties in

addition to supervision. Bellott was an Opperman employee. It is possible for more than one person to "have charge of" the work, and the jury could have found against Pleasant Ridge on that issue. *Simmons v. Union Electric Co.*, 104 Ill. 2d 444, 454, 473 N.E.2d 946, 951 (1984). On this record we cannot say, however, that a contrary decision is against the manifest weight of the evidence. The jury could have found that only Heinz, and not Pleasant Ridge, had the supervision and control of the work.

■ During opening statements, Kelly's attorney told the jury there would be testimony as to Kelly's need for future surgery and the approximate cost of that future surgery. Pleasant Ridge's attorney objected that because Opperman, the employer, had waived its compensation lien, and future medical expenses would be paid under the Workers' Compensation Act (Compensation Act) (820 ILCS 305/1 *et seq.* (West 1992)), recovery of future medical expenses would constitute a double recovery. The court sustained the objection and ruled that Kelly could not present any evidence pertaining to the cost of future medical care and treatment. The court also refused Kelly's verdict form which included future medical expenses. All of this was completely unnecessary on the trial court's part. The trial court could have allowed the evidence in, could have allowed the jury to have entered a verdict for future medical expenses, and then deleted that amount when it entered judgment on the verdict. The court in fact did that with past medical expenses, allowing the jury to consider those expenses and render a verdict on them in the amount of $23,400, even though they had already been paid under the Compensation Act. Then when the trial court entered judgment, the amount was reduced by the $23,400, as a good-faith settlement under the Joint Tortfeasor Contribution Act (740 ILCS 100/1 through 5 (West 1992)). See *Wilson v. Hoffman Group, Inc.*, 131 Ill. 2d 308, 324, 546 N.E.2d 524, 532 (1989) (waived lien constitutes a good-faith settlement to be set off against judgment); *Lannom v. Kosco*, 158 Ill. 2d 535, 538, 634 N.E.2d 1097, 1099 (1994) (employer allowed to agree to waive lien over plaintiff's objection). Double recovery was accordingly not truly a concern in this case.

Dr. Thomas Eilers would have testified that Kelly was expected to incur $20,000 in future medical expenses. Even if the only evidence kept from the jury was the amount of the expenses, that figure would have assisted the jury in quantifying the amount of future treatment Kelly was expected to incur. The amounts of medical bills could naturally and legitimately influence a jury's perception of the legitimacy of a plaintiff's claim of inability to return to work and the extent of his pain and suffering. The evidence is relevant to damages

properly claimed by Kelly, it could not have resulted in any prejudice to either defendant, and there must be a new trial on damages with the evidence admitted.

■ During the cross-examination of Dr. Thomas E. Szymke, one of plaintiff's treating physicians, counsel for Heinz asked the doctor to comment on a statement which Kelly had made to a therapist "that he has been advised by a lot of his physicians that he may not be able to return to his previous type of employment." Counsel for Heinz asked, "Did that suggest to you that his mind-set was that he was not going to go back to work at bricklaying?" Over objection the doctor answered, "Yes." There is no suggestion that Dr. Szymke had any expertise in determining a person's mind-set on the basis of language previously used by the individual. The matter was within the common knowledge and experience of the jury, and the jury was not assisted by the doctor's view. On retrial, this testimony should not be allowed.

■ Kelly called his co-worker, Jerry Witte, as a witness. Witte was a mason with over 17 years' experience, a union steward, and he was working on the scaffolding when it fell. On cross-examination it was brought out that Witte did not report any unsafe practices before the accident and did not notice anything unusual about the stability of the towers. Kelly argues that this cross-examination constituted an attempt to place responsibility for the accident on Kelly and his co-workers. Neither the contributory negligence of plaintiff nor the comparative negligence of others is a defense in a case brought pursuant to the Act. *Hollis v. R. Latoria Construction, Inc.*, 108 Ill. 2d 401, 485 N.E.2d 4 (1985); *Simmons*, 104 Ill. 2d at 459-61, 473 N.E.2d at 953-54. However, one of the questions the jury had to decide was whether defendants knew of the dangerous situation or in the exercise of ordinary care could have discovered the condition. Witte's testimony that he noticed nothing wrong was relevant on that issue. The trial court could properly have determined that any prejudicial impact of the testimony was outweighed by its probative value.

■ The trial court properly excluded records prepared by Dr. Bernard Doyle, one of Kelly's treating physicians, when Kelly sought to introduce those records. Records prepared in anticipation of litigation are not records "made in the regular course of [the] business." 145 Ill. 2d R. 236(a). The same may not be true of records prepared by Dr. Debra Lindell, because she was retained by Pleasant Ridge. Records not admissible as business records may nevertheless be admissible against a party as an admission. See *Ficken v. Alton & Southern Ry. Co.*, 255 Ill. App. 3d 1047, 1063, 625 N.E.2d 1172, 1182 (1993).

■ Dr. Lindell's records contained reports of her examinations of Kelly and opinions she reached based on those examinations. For many years Rule 236, setting out the civil business records exception to the hearsay rule, provided that it did not allow the admission of "medical records." See 134 Ill. 2d R. 236(b). Rule 236 was amended, effective August 1, 1992, to remove that restriction. 145 Ill. 2d R. 236(b). Nevertheless, the trial court was not required to admit the records of Dr. Lindell. Although medical records are admissible as business records under Federal Rule of Evidence 803(6) (Fed. R. Evid. 803(6) (28 U.S.C. app. § 803(6), at 896 (1994))), and that rule specifically allows opinions, the federal courts are reluctant to permit a case to be decided on the basis of an opinion not subjected to cross-examination. 2 J. Strong, McCormick on Evidence § 293, at 281 (4th ed. 1992). The supreme court has expressed approval for the admission of reports or records of routine, ministerial, objective, and nonevaluative matters made in a nonadversarial setting. Other matters, however, "should be accounted for in some other manner, such as testimony by a witness to the matters contained therein." *People v. Smith*, 141 Ill. 2d 40, 74, 565 N.E.2d 900, 915 (1990). The trial court could properly have concluded that the opinions of Dr. Lindell were important enough that they should be presented by live testimony, rather than in the form of medical records.

■ One of the jurors was in a dance class with Paula Opperman, the wife of the owner of Opperman. The juror did not previously know Paula's last name. After the second day of trial, Paula, apparently very upset, told the juror that the juror was on their trial and had to withdraw. The juror was excused, but not before she discussed the incident with the remaining jurors. Kelly moved for a mistrial, but declined the court's offer to *voir dire* the remaining jurors. Although communications during deliberations are presumptively prejudicial, the objecting party has the burden of showing a probability of prejudice for other communications. *Frede v. Downs*, 101 Ill. App. 3d 812, 815, 428 N.E.2d 1035, 1037 (1981); *People ex rel. Walker v. Pate*, 53 Ill. 2d 485, 505, 292 N.E.2d 387, 398-99 (1973); *People v. Canaday*, 49 Ill. 2d 416, 426, 275 N.E.2d 356, 362 (1971). Kelly has not shown prejudice in this case. We do not see how the verdict in favor of Pleasant Ridge but against Heinz can be said to show prejudice.

■ We have considered Kelly's remaining arguments: (1) that Angela Augsburger's testimony was an appeal to passion or sympathy, (2) that the trial court should have stricken certain arguments *sua sponte*, (3) that Occupational Safety and Health Administration regulations should not have been considered in establishing the stan-

dard of care, (4) that the instruction should not have been given that Opperman was a corporation which can act only through its employees, (5) that Kelly was prejudiced when the trial court refused to give an instruction that more than one person can be in charge of the work, and (6) that a missing witness instruction should have been given for the failure to produce Dr. Lindell. We find no merit in any of those arguments.

Accordingly we affirm the decision in favor of Pleasant Ridge, we affirm the decision against Heinz on the issue of liability, and we reverse and remand for a new trial against Heinz on the issue of damages.

Affirmed in part; reversed in part and remanded.

GREEN and KNECHT, JJ., concur.