In re KENNETH J., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Carmen D., Respondent-Appellant).

First District (2nd Division)   No. 1—02—3543

Opinion filed September 21, 2004, *nunc pro tunc* August 10, 2004.

Edwin A. Burnette, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Peter Maltese, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Christopher J. Williams, of counsel), guardian *ad litem*.

PRESIDING JUSTICE BURKE delivered the opinion of the court:

Respondent Carmen D. appeals from an order of the circuit court, finding her unfit on the basis that she failed to make reasonable progress toward the return of her child, Kenneth J., within the nine-month period following adjudication of neglect or abuse and/or within any nine-month period thereafter and terminating her parental rights. On appeal, respondent contends that: (1) the petition for termination denied her due process because it failed to identify the nine-month period at issue; (2) the trial court erred in admitting into evidence a "Parenting Assessment Report" (Report) as relevant and as a business record; (3) the trial court erred in admitting testimony from caseworkers; and (4) the trial court's finding of unfitness was against the manifest weight of the evidence. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

Respondent and her children first became involved with child protection agencies in October 1990. On August 7, 1996, the State filed a petition for adjudication of wardship over respondent's three children, including Kenneth, born February 17, 1996, alleging that Kenneth was abused and neglected on the bases that his two siblings, Michael and Tiffany, had been sexually molested by respondent's

paramour on August 28, 1995, respondent refused services, and respondent refused to comply with requests, including counseling. On August 8, Patrick Murphy was appointed guardian *ad litem* (GAL) and temporary custody of Kenneth was granted to his maternal aunt, Wanda, respondent's sister, and her husband, Derrick.

On February 20, 1997, an adjudication order was entered, finding Kenneth abused or neglected based on an injurious environment and substantial risk of injury. On May 30, a dispositional order was entered, adjudicating Kenneth a ward of the court. At all times thereafter, respondent's visits with her children were supervised pursuant to court order.

On March 4, 1999, the trial court ordered a parenting assessment evaluation to be done of respondent. This assessment was undertaken in late 1999 by members of a team from Thresholds Mothers' Project, an agency funded by the Department of Children and Family Services (DCFS), whose purpose was to assist DCFS and the juvenile court in evaluating parenting capabilities of mentally ill parents. The Report, consisting of a summary and four individual evaluations, was subsequently entered into evidence at respondent's termination hearing over respondent's objection. The Report summary indicated that respondent's case was referred to the team on May 4, 1999. Respondent and her children were evaluated by Kathleen Pesek, M.Ed., a child development specialist, on November 8, 1999; Mark Amdur, M.D., a psychiatrist, on October 28; Nycole Bridle, B.A., a case aide, and Frank Lani, Ph.D., a psychologist, on October 27; and Barbara White, L.C.S.W., A.C.S.W., a social worker, on October 25. White's evaluation took place at respondent's home and the other evaluations took place at the team's office. The summary identified the referral questions and the team's subsequent answers as:

"1. Are there any additional services that would enable [respondent] to regain custody of her children?

[Respondent's] primary areas of difficulty appear to be her limited intellectual resources and her highly abusive, unstable, and traumatic life history. She does not appear to be suffering from a major mental illness at this time, and does not require any specific therapeutic intervention that would help remediate her circumstances. While [respondent] may personally benefit from a supportive professional relationship, there are no specific services that would enable [respondent] [to] adequately parent her children. 2. With regard to permanency, would a goal of return home for [respondent's] children be in her best interest?

[Respondent] made it clear that she does not feel that her children should have been removed from her care, and that she

cares for her children very much and would like for them to return home. However, it does not appear to be in her best interest for the children to return home, nor in their best interest. [Respondent's] psychiatric conditions are all of the type that may become particularly problematic under stress. When this occurs, she responds with agitation, disorganization and threats of self-harm. The special needs of her children—which [respondent] has a poor understanding of—combined with parenting difficulties are likely to result in an increasing level of stress that [respondent] has been unable to handle in the past which would further tax [respondent's] functioning."

The summary also identified significant risk factors, including respondent's primary difficulty as being her extremely limited intellectual capacity. According to the Report, respondent had no clear understanding of why her children were taken away and disagreed with the decision to do so. As such, the Report indicated that respondent's "lack of insight suggests low probability that problematic issues would change." The Report further noted that respondent was driven by her need for the children or how they made her feel and not by their needs. She tended toward role reversal and held unreasonably high expectations of her children. The Report continued that respondent's understanding of child development was deficient and that she was "in significant psychological distress." As a result of this, her relationships with others tended to be "unrewarding or difficult." The Report also indicated that respondent's social support network was very limited. The Report recommended that, given respondent's difficulties, there were "no additional services that would sufficiently increase her parenting capability to an acceptable level."[1]

On May 30, 2001, the State filed a supplemental petition to appoint a guardian with the right to consent to adoption. The petition alleged that respondent was unfit under section (1)(D)(b) of the Adoption Act (Act), failure to maintain a reasonable degree of interest, concern or responsibility, and under section (1)(D)(m), in that she "failed to make reasonable effort to correct the conditions which were the basis for the removal of the children from [her] and/or [has] failed to make reasonable progress toward the return of the children to [her], within 9 months after the adjudication of neglect or abuse *** and/or within any 9 month period after said finding." 750 ILCS 50/1 (West 2002).

Hearings on the termination petition began on May 15, 2002.

---

[1]Due to page restrictions, the four individual evaluation reports are not included in the published portion of this opinion, but are detailed in the unpublished portion.

After hearing the evidence and the arguments of the parties, the court found respondent unfit only with respect to section (1)(D)(m)(iii) of the Act. 750 ILCS 50/1(D)(m)(iii) (West 2002). Following an immediate best interests hearing, the court concluded that it was in Kenneth's best interests to appoint a guardian with the right to consent to adoption. On October 15, 2002, the trial court entered a termination hearing order, finding respondent unfit with respect to reasonable progress. The trial court also entered a permanency order terminating respondent's parental rights and stating that the goal was adoption. This appeal followed.

## ANALYSIS

### I. Due Process

Respondent first contends that the State's petition for termination violated her due process rights because it did not identify the nine-month period in which she allegedly failed to make reasonable progress. Respondent argues that it is impossible to determine from the petition which nine-month period, of the five different nine-month periods existing, the State was going to litigate and, thus, she did not have sufficient notice as required by due process. Respondent maintains that the law requires the State to set forth a specific and distinct time period. Respondent further argues that her failure to raise the issue in the trial court did not waive it for review because the failure to state a cause of action, as is the case here, can be raised at any time.

The guardian contends that respondent waived review of this issue because she failed to object to it in the trial court and give the State an opportunity to cure any alleged defect, that the petition did not deny respondent due process because the State is not required to set forth a specific nine-month time period—the State is only required to allege respondent's unfitness and the statutory ground for same— and, alternatively, even if the State was required to do so, respondent suffered no prejudice and failed to demonstrate how she was surprised or prejudiced by the petition. The guardian relies on several cases to support his position that the State need not allege a specific time frame.[2] The State presents essentially the same arguments.

■ Section 1(D)(m) of the Act sets forth the following bases for the termination of parental rights:

---

[2]We note that all of these cases were decided prior to January 1, 2000, when subsection (iii) of the Act became effective. Accordingly, they can have no bearing on the issue presented to this court since they clearly could not have interpreted this section.

"Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act." 750 ILCS 50/1(D)(m) (West 2002).

It is well settled that "pleading defects must be raised at trial so they may be remedied; otherwise they are forfeited." *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1045, 796 N.E.2d 1175 (2003). However, in some circumstances, justice requires relaxation of the forfeiture rule. As such, "courts have relaxed the rule when the State's termination petition fails to state a cause of action." *In re J.R.*, 342 Ill. App. 3d 310, 315, 794 N.E.2d 414 (2003). In connection with petitions for termination, "[t]he requirement of pleading with specificity does not require more than setting forth the specific statutory grounds of unfitness." *In re Andrea D.*, 342 Ill. App. 3d 233, 242, 794 N.E.2d 1043 (2003). The question on appeal then is whether the alleged defects in the State's petition resulted in a failure to state a cause of action. *In re J.R.*, 342 Ill. App. 3d at 316. When a challenge is raised to the sufficiency of a pleading, it is an issue of law, which we review *de novo*. *In re Janine M.A.*, 342 Ill. App. 3d at 1045; 735 ILCS 5/2—612(c) (West 2002).

Respondent relies on two cases in support of her argument that she did not waive review of this issue because the State's petition failed to state a cause of action, which she may raise at any time: *Rauch v. Griffin*, 45 Ill. App. 3d 784, 359 N.E.2d 894 (1977), and *In re J.P.S.*, 198 Ill. App. 3d 633, 556 N.E.2d 268 (1990). Neither case supports her position. In *Rauch*, the State's petition for termination of the parents' rights did not contain any allegations that the parents were unfit or the statutory grounds for same. *Rauch*, 45 Ill. App. 3d at 787. After stating that the failure to state a cause of action can be raised at any time, the *Rauch* court noted that the Act "requires the petition to state that the parent is unfit and the grounds therefor[ ]." *Rauch*, 45 Ill. App. 3d at 788. According to the court, these allegations are material and are essential elements of a petition. *Rauch*, 45 Ill. App. 3d at 788. The *Rauch* court then concluded:

"Under the circumstances presented in this case, the failure to al-

lege the unfitness of respondents and the grounds therefor[ ], as required by the Adoption Act, rendered the petition fatally defective and the cause must be reversed." *Rauch*, 45 Ill. App. 3d at 789. Instead of supporting respondent's position here that the petition failed to state a cause of action, *Rauch* supports the conclusion that the petition did, in fact, under the directives of *Rauch*, state a cause of action. Unlike the petition in *Rauch*, the State's petition in the instant case alleged that respondent was unfit and the grounds therefor, *i.e.*, that she failed to maintain a reasonable degree of interest in her children, failed to make reasonable efforts to correct conditions, and failed to make reasonable progress toward the return of her children in the nine-month period following adjudication or any nine-month period thereafter.

In *In re J.P.S.*, the State's petition sought termination of the mother's parental rights on the basis that the minor was adjudicated abused and the mother failed to make reasonable efforts to correct the condition under which the child was removed. *In re J.P.S.*, 198 Ill. App. 3d at 635. The trial court entered a finding of unfitness and terminated the respondent's parental rights. *In re J.P.S.*, 198 Ill. App. 3d at 633-34. The appellate court reversed, concluding that the statutory ground, based on the specific language of the statute at that time, for finding unfitness based on a failure to make reasonable efforts, applied only to neglected and dependent minors, not to abused minors. *In re J.P.S.*, 198 Ill. App. 3d at 635. Although the court noted that the legislature had subsequently amended the statute to include abused minors, it found that this amendment did not "save" the case before it. *In re J.P.S.*, 198 Ill. App. 3d at 635. Because the statute did not include abused minors, the court further concluded that the State's petition failed to state a cause of action, which the respondent could challenge for the first time on appeal. *In re J.P.S.*, 198 Ill. App. 3d at 634-35. Again, this case does not support a finding in the instant case that the State's petition failed to state a cause of action. *In re J.P.S.* involved a situation where the nature of the adjudication was not covered by the termination statute. Clearly, if a situation is not covered by the statute, the State cannot state a cause of action. This is simply not the case here.

■ Since we have found that the State's petition here did not fail to state a cause of action, the rule allowing a respondent to challenge the petition for the first time on appeal is not applicable. Further, because respondent failed to object to the State's petition in the trial court or request that the State provide specific dates, she forfeited review of this issue. See *In re Jaron Z.*, 348 Ill. App. 3d 239, 255, 810

N.E.2d 108 (2004) (concluding that the respondent forfeited review of her due process challenge to subsection (iii) of the Act because she failed to object in the trial court or raise any issue at trial in connection with subsection (iii)); *In re Dominique W.*, 347 Ill. App. 3d 557, 565, 808 N.E.2d 21 (2004) (holding that the respondent waived review of her challenge to the sufficiency of the State's termination petition because she failed to raise it in the trial court); *In re J.R.*, 342 Ill. App. 3d at 316 (same and concluding that where the State's petition "clearly stated what action it sought the trial court to take, and the legal grounds that justify that action," it did not fail to state a cause of action).

Assuming, *arguendo*, that respondent had not forfeited her challenge, we would find her argument unpersuasive. Although no case has directly addressed whether the State's petition must identify the specific nine-month period at issue, several cases offer instruction in this regard. In *In re Jaron Z.*, the State filed a petition to terminate parental rights under section (1)(D)(m) of the Act, alleging that the respondent failed to make reasonable progress toward return of her child within nine months after the adjudication hearing or within any nine-month period thereafter. *In re Jaron Z.*, 348 Ill. App. 3d at 245. The respondent filed a demand for particulars, asking the State to identify the "exact dates" of the nine-month period at issue. The State moved to strike this demand, which the trial court granted. *In re Jaron Z.*, 348 Ill. App. 3d at 245. After the State had rested, but before the respondent began her case in chief, the respondent moved for a directed finding. *In re Jaron Z.*, 348 Ill. App. 3d at 247. At this time, the court inquired of the State as to which nine-month period it was examining. *In re Jaron Z.*, 348 Ill. App. 3d at 247. The State responded that it was March to December 2000. During closing argument, the State gave an alternative period of May 31, 2000, to February 2001. The trial court, in deciding the matter, stated that it could look at the first nine-month period or any other nine-month period thereafter. It determined that it would take into consideration the period from March 15 to December 15, 2000. *In re Jaron Z.*, 348 Ill. App. 3d at 250. On appeal, the respondent argued that section (1)(D)(m)(iii) was unconstitutional because it violated due process in circumventing the State's burden of proof since

> "the State's ability to choose any nine-month time period after the initial nine months following an adjudication of neglect in which to examine a parent's fitness *** affords no notice to the parent regarding which nine-month period she will be evaluated on and, accordingly, reduces the State's burden of proof in demonstrating the parent's unfitness." *In re Jaron Z.*, 348 Ill. App. 3d at 255.

Although concluding that the respondent forfeited review of the issue because of her failure to raise it in the trial court, the *In re Jaron Z.* court concluded that even assuming the issue was reviewable, the respondent's argument was without merit because subsection (iii) provides merely an additional ground to prove unfitness, but does not change the State's burden of proof, *i.e.*, the section does not change the quantum of evidence needed to prove unfitness, only the type. *In re Jaron Z.*, 348 Ill. App. 3d at 256-57. Ultimately, the court concluded:

> "In our view, the section is clear with respect to the applicable time: a parent's actions for a fitness determination may be examined in light of *any nine month increment of time* beginning following the expiration of the first nine month period after the adjudication of neglect. [Citation.]" (Emphasis added.) *In re Jaron Z.*, 348 Ill. App. 3d at 258.

*In re K.H.*, 346 Ill. App. 3d 443, 804 N.E.2d 1108 (2004), is also instructive, although we note that the respondent there did not challenge the sufficiency of the State's petition. In *In re K.H.*, the minor was adjudicated neglected on October 7, 1999. On April 2, 2002, the State filed a petition for termination of parental rights on the basis that the mother had failed to make reasonable progress during both the initial nine-month period and any nine-month period thereafter. *In re K.H.*, 346 Ill. App. 3d at 444. At the hearing on the State's petition, the court heard evidence spanning from December 1999 to at least March 2002. *In re K.H.*, 346 Ill. App. 3d at 445-52. The trial court concluded that the respondent was unfit in that "she failed to make reasonable progress toward the goal of returning K.H. home in a nine-month period after the initial nine-month period that followed the adjudication of neglect." *In re K.H.*, 346 Ill. App. 3d at 452. The appellate court affirmed, stating:

> "Simply put, a parent is required to make reasonable progress during a nine-month period. *** The trial court had an adequate basis to find that the State proved by clear and convincing evidence that respondent failed to make reasonable progress in a nine-month period after the nine-month period that followed the adjudication of neglect." *In re K.H.*, 346 Ill. App. 3d at 455.

Not once in this decision was any specific nine-month period identified. Clearly, the cases discussed above demonstrate that the State need not identify the specific nine-month period in its petition for termination.[3]

In *In re Dominique W.*, which we granted the State leave to file as

---

[3]Also enlightening is the following comment made by Senator Karpiel of the Illinois General Assembly regarding the addition of subsection (iii):

additional authority in the instant case, the respondent was found unfit under section 1(D)(b) of the Act (failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare). *In re Dominique W.*, 347 Ill. App. 3d at 558. On appeal, the respondent contended that the State's petition was legally insufficient because it merely recited the statutory language without alleging any specific facts of misconduct on her part. *In re Dominique W.*, 347 Ill. App. 3d at 565. The court first concluded that the respondent waived review of the issue because she failed to raise it in the trial court. *In re Dominique W.*, 247 Ill. App. 3d at 565. Waiver aside, the court concluded that the respondent's argument was without merit, finding here that the State's petition was sufficient because it set forth the specific statutory ground supporting unfitness, section 1(D)(b), which, according to the court, was all the State was required to plead, and that the petition sufficiently apprised the respondent of the charge against her. *In re Dominique W.*, 347 Ill. App. 3d at 565. This case, although addressing a different statutory ground, further supports a finding here that the State need not allege the specific nine-month period because it, too, held that the State need only allege unfitness and the relevant statutory ground.

Moreover, the language of subsection (iii) of the Act itself does not support a conclusion that the State need identify a specific nine-month period. The statute uses the term "any." 750 ILCS 50/1(D)(m)(iii) (West 2002). It does not state "an or any identified" or "a or any

"SENATOR KARPIEL: *** House Bill 1298 amends the Adoption Act. It amends the grounds of parental unfitness to include failure to make reasonable progress toward the return of a child to the parent during any nine-month period after the end of the initial nine-month period following the adjudication of the child as neglected, abused or a dependent. At present under the Adoption Act, they—the court can only use evidence in the nine-month period from the adjudication to the filing period of termination. And since the termination hearing sometimes isn't till maybe a year later, the court would really like to hear—*be able to hear evidence during the other—the rest of the period.* This can be good or bad for a—a parent. Sometimes that first nine-month period, perhaps they don't really get their act together too well, and then they—at the termination hearing, the court can only use a bad evidence of—of their fitness for being a parent, or it can be that they start out good and then they start—start to slowly go back to their old bad ways and that's not so good for the kids. So either way, *but the court would like to be able to use the entire time, look at the evidence during that entire period.* And that's all the bill does." (Emphasis added.) 91st Ill. Gen. Assem., Senate Proceedings, May 6, 1999, at 37-38 (statements of Senator Karpiel).

specified" nine-month period after the initial nine-month period. "Any" means "one, no matter what one," or "any part, quantity, or number." Webster's Third New International Dictionary 97 (1993). Respondent asks this court to add language to the statute that the legislature did not include.

Lastly, as the guardian argues, respondent has not demonstrated how she was prejudiced by the failure to identify a specific nine-month period. Respondent has not identified what additional evidence she would have offered or alternative arguments she would have made to the court that would have changed the outcome of this case. See *In re Jaron Z.*, 348 Ill. App. 3d at 258 (noting that "respondent failed before the trial court, and fails now on appeal, to state how she was prejudiced, if at all, by the application of section 1(D)(m)(iii) to her cause. *** She made no offer of proof at trial, nor does she assert a basis before us, regarding what different evidence she would have presented or argument she would have made that would have changed the outcome here"); *In re J.R.*, 342 Ill. App. 3d at 317 (concluding that because the respondent failed to allege, and the court was not able to ascertain from the record, "any way in which the alleged defect affected respondent's rights or interests," her claim would fail even assuming it was not waived).

Based on the foregoing, we find that the State's petition did not fail to state a cause of action and, therefore, because respondent did not challenge the petition in the trial court, she cannot do so now. Further, were we to address respondent's challenge substantively, we would find that relevant case law, as well as the language of subsection (iii) itself, does not mandate a conclusion that the State must identify a specific nine-month period in its petition for termination. Accordingly, we would find respondent's challenge unpersuasive.

## II. Admission of Parenting Assessment Team Report

Respondent next contends that the trial court erred in admitting the Report because it was irrelevant to the issue of her fitness and it was not a business record.

### A. Relevancy

Respondent first maintains that the Report was not relevant to the issue of her fitness, but rather only to the best interests analysis, and, thus, it was inadmissible. In this regard, respondent argues that compliance with service plans is the touchstone of reasonable progress and the Report had no relevance to her reasonable progress or whether she made progress in correcting the conditions that resulted in the adjudication in the first instance.

The guardian maintains that the Report was relevant because it

was primarily concerned with respondent's services and was completed for the express purpose of determining whether there were any services available to respondent to assist her in having Kenneth returned to her. According to the guardian, the Report directly related to respondent's ability to regain custody of Kenneth and the core of the evaluation was respondent's ability to parent. The guardian further argues that the Report was created for the same purpose service plans are created—as a social service tool—and not for litigation. The guardian also maintains that the Illinois Supreme Court has rejected the view that reasonable progress determinations are limited to correcting circumstances occurring when the case started.

The State presents arguments that are the same as the guardian's. In addition, the State argues that respondent ignores the first stated goal of the Report and misquotes the second. According to the State, the first goal clearly addresses issues relevant to reasonable progress.

The cases relied upon by respondent in support of her position that the Report is only admissible with respect to a best interests hearing, *In re D.T.*, 338 Ill. App. 3d 133, 788 N.E.2d 133 (2003), and *In re C.B.*, 248 Ill. App. 3d 168, 618 N.E.2d 598 (1993), do not aid her. In *In re D.T.*, although a team parenting assessment was undertaken of the respondent and two of the doctors involved in the assessment testified, there was no evidence that the report created by the team was admitted as evidence, nor was there any question raised as to its admissibility. As such, *In re D.T.* does not address the question posed by respondent here: the admissibility of the Report. More importantly, the respondent in *In re D.T.* was alleged unfit based on her " '[f]ailure to protect the child from conditions within his environment injurious to the child's welfare.' [Citation.]" *In re D.T.*, 338 Ill. App. 3d at 145. Evidence of the respondent's conduct after removal of her child was not relevant to this ground of unfitness. *In re D.T.*, 338 Ill. App. 3d at 145. Rather, only evidence of the respondent's conduct before the child was removed was relevant. *In re D.T.*, 338 Ill. App. 3d at 146. Therefore, any testimony, including that from the two doctors involved in the parenting assessment, that related to the respondent's conduct after removal was not relevant to the question of fitness. In the instant case, we are not dealing with that ground of unfitness, limiting relevant evidence to respondent's conduct prior to removal of her children. As such, *In re D.T.* is inapplicable.

Respondent relies on *In re C.B.* for the proposition that a bonding assessment, and thus, here, the parenting assessment, is relevant only to a best interests determination. Again, this case does not support respondent's position. In *In re C.B.*, the question of which of two individuals, neither of whom was the natural mother of the minor,

should be awarded permanent custody was at issue. *In re C.B.*, 248 Ill. App. 3d at 169. The resolution of this question revolved entirely around a best interests determination. *In re C.B.*, 248 Ill. App. 3d at 176. While it is true that a bonding assessment was done and the expert concluded that the child was attached to one person over the other (*In re C.B.*, 248 Ill. App. 3d at 173), the appellate court found that the assessment was completely inadequate (*In re C.B.*, 248 Ill. App. 3d at 177), and ruled that the trial court erred in unreasonably relying on the expert's conclusion simply because it was uncontradicted (*In re C.B.*, 248 Ill. App. 3d at 179).

First, respondent does not explain or argue how the parenting assessment here is akin to the bonding assessment in *In re C.B.* or why the two clearly different types of assessments should be treated the same. More importantly, however, *In re C.B.* is clearly inapplicable to the instant case. It did not involve a question of the fitness of a natural parent, unlike the instant case. Moreover, the question of the admissibility of the bonding assessment report or testimony in connection with same was not at issue. Lastly, the assessment and report were clearly inadequate. As such, *In re C.B.* does not aid respondent, nor this court, in determining whether the Report here, which respondent does not contend is inadequate, was admissible in connection with her fitness.

The question in the instant case ultimately revolves around whether respondent made reasonable progress toward the return of her children. "The admission of evidence is within the discretion of the circuit court and its ruling will not be reversed absent an abuse of that discretion. [Citation.] All evidence must be relevant to be admissible. [Citation.] Evidence is relevant if it tends to prove a fact in controversy or render a matter in issue more or less probable." *Smith v. Silver Cross Hospital*, 339 Ill. App. 3d 67, 76, 790 N.E.2d 77 (2003). With respect to "reasonable progress," the case of *In re C.N.*, 196 Ill. 2d 181, 752 N.E.2d 1030 (2001), relied upon by the guardian, is instructive on what evidence is relevant to this determination. In *In re C.N.*, the court first noted that the statute fails to set forth how progress is measured and "does not explain what steps are necessary to reach the goal of 'the return of the child.' " *In re C.N.*, 196 Ill. 2d at 211. Our supreme court noted that the appellate court was not in agreement as to the appropriate "benchmark" to use to measure a parent's progress. *In re C.N.*, 196 Ill. 2d at 212. Some courts "have measured progress by looking at the degree to which a parent has corrected the situation which triggered the minor's initial removal or the conditions existing at the time custody [was] taken." *In re C.N.*, 196 Ill. 2d at 212. Other courts "have held that once the court, or an

authorized agency like DCFS, decides what steps a parent must take to achieve the return of the child, subsequent inquiry into a parent's progress should focus on the parent's compliance with the DCFS service plan, the court's directives, or both." *In re C.N.*, 196 Ill. 2d at 212. Still other courts have taken a middle ground. *In re C.N.*, 196 Ill. 2d at 212.

The *In re C.N.* court rejected the narrow view "that a court may only look to the situation that triggered the minor's initial removal, or the conditions existing at the time custody [was] taken." *In re C.N.*, 196 Ill. 2d at 213. In this regard, the court stated that this view "erroneously assumes that the condition which triggered removal of the child is the *only* condition a parent need ever address in order to achieve the goal of reunification." (Emphasis in original.) *In re C.N.*, 196 Ill. 2d at 213. According to the supreme court, "[t]he parent-child relationship, the environment in the home, and the precise conditions which triggered State intervention do not remain static over time." *In re C.N.*, 196 Ill. 2d at 213. Additionally, "other serious conditions *** may become known only after removal, following further investigation of the child, parent and family situation." *In re C.N.*, 196 Ill. 2d at 214. According to the court, "[t]he necessity of considering other conditions that later come to light is reflected in the broad scope of the investigation authorized under the Juvenile Court Act." *In re C.N.*, 196 Ill. 2d at 214. Specifically, the court noted that service plans are not limited to addressing those conditions that triggered removal, but "must reasonably relate to 'remedying a condition or conditions that gave rise *or which could give rise* to any finding of child abuse or neglect.' [Citation.]" (Emphasis in original). *In re C.N.*, 196 Ill. 2d at 214. The *In re C.N.* court also rejected the narrow view that focus should solely be on the parent's compliance with service plans. *In re C.N.*, 196 Ill. 2d at 214. However, the court did note that compliance with service plans is "intimately tied to a parent's progress toward the return of the child." *In re C.N.*, 196 Ill. 2d at 217.

Ultimately, the court stated that "the overall focus in evaluating a parent's progress toward the return of the child remains, at all times, on the fitness of the parent in relation to the needs of the child." *In re C.N.*, 196 Ill. 2d at 216. The court concluded:

> "[T]he benchmark for measuring a parent's progress under section 1(D)(m) of the Adoption Act must take into account the dynamics of the circumstances involved; the reality that the condition resulting in removal of the child may not be the only, or the most severe, condition which must be addressed before custody of the child can be returned to the parent; the appropriate role of service plans in addressing these conditions; and the overriding concern

that a parent's rights to his or her child will not be terminated lightly." *In re C.N.*, 196 Ill. 2d at 216.

Accordingly, the court held:

"[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d at 216-17.

■ Based on *In re C.N.*, relevant evidence with respect to reasonable progress includes: evidence in connection with compliance with service plans and court directives; evidence in connection with correction of the conditions leading to removal; and evidence in connection with any other conditions that may be disclosed through subsequent investigation that a parent must address in achieving the goal of return. Contrary to respondent's argument here, the sole focus is not on compliance with service plans or correction of the conditions resulting in removal. Rather, evidence relevant to the reasonable progress analysis includes other conditions that may become known that require correction or addressing. The Report here certainly falls within the ambit of this. The Report, although it does contain information and conclusions in connection with the best interest of the children, extensively addresses conditions or circumstances of respondent that relate to her fitness in relationship to the needs of her children. Certainly, the Report tends to prove a fact in controversy, respondent's fitness, *i.e.*, whether there are any conditions that would prevent the court from returning her children to her. As such, we conclude that the trial court did not abuse its discretion in admitting the Report as relevant.

## B. Business Record

■ Respondent next maintains that the Report was not admissible as a business record because it was prepared for litigation. Specifically, respondent argues that it was prepared by a team of experts to assist in litigation and was done at the request of the trial court. As such, respondent argues that it is not a business record. Respondent also maintains that the Report contained expert opinions that were not subject to cross-examination. According to respondent, expert opinions must be given by live testimony.

The guardian contends that the Report was properly admitted as a business record since it is similar to service plans in nature and purpose. The guardian further contends that the current trend of

authority allows opinions to be admitted as part of business records, authority that respondent ignores. In this regard, the guardian maintains that the Report in fact did not contain expert opinions because none of the authors were qualified as experts. The State again presents arguments similar to the guardian's.

Section 2—18(4)(a) of the Juvenile Court Act provides:

> "Any writing, record, photograph or x-ray of any hospital or public or private agency, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event, if the court finds that the document was made in the regular course of the business of the hospital or agency and that it was in the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter." 705 ILCS 405/2—18(4)(a) (West 2002).

To be admissible as a business record under this section, the State must establish that the writing was "(1) made as a memorandum or record of the event, (2) made in the ordinary course of business, and (3) made at the time of the event or within a reasonable time thereafter." *In re A.B.*, 308 Ill. App. 3d 227, 235, 719 N.E.2d 348 (1999).

We find that the trial court did not err in admitting the Report as a business record. First, the case relied upon by respondent in support of her argument, *Kelly v. HCI Heinz Construction Co.*, 282 Ill. App. 3d 36, 668 N.E.2d 596 (1996), involved admission of evidence under Supreme Court Rule 236 (145 Ill. 2d R. 236), which is not applicable to juvenile court proceedings. See *In re A.B.*, 308 Ill. App. 3d at 234-35. As such, the ruling in that case is not applicable here. More importantly, the requirements for admission under section 2—18(4)(a) of the Juvenile Court Act were met. Evidence was presented during the hearing that this document was prepared in the agency's regular course of business and it was clearly made contemporaneously with the events the Report recorded.

With respect to respondent's argument that the Report was prepared for litigation and, therefore, is not a business record, we disagree. First, it has been noted that "[s]imply because they [client service plans] are used in an adversarial-type proceeding is of no consequence." *In re A.B.*, 308 Ill. App. 3d at 236. Accordingly, because the Report was used in this termination proceeding and, in fact, was requested by the trial court itself, does not control whether it is a business record. Moreover, under the Juvenile Court Act, agencies are

required to " 'assist a Circuit Court during all stages of the court proceeding in accordance with the purposes of *** the Juvenile Court Act of 1987 by providing full, complete, and accurate information to the court.' " *In re A.B.*, 308 Ill. App. 3d at 236. Clearly, the Report serves this purpose. It certainly provides additional information to the court, necessary for the court to render its decision on respondent's fitness. The Report was created with family preservation and the best interests of all parties in mind. More importantly, the Report was "created as a direct result of the ongoing juvenile proceeding and relate[d] to a condition which [was] also directly related to that proceeding." *In re M.S.*, 210 Ill. App. 3d 1085, 1095-96, 569 N.E.2d 1282 (1991).

Accordingly, we find that the trial court did not err in admitting the Report as a business record.

### III. Caseworker Testimony

We agree with the State's argument that respondent forfeited review of this issue on appeal by failing to object to the testimony in the trial court. Accordingly, we decline to address respondent's challenge.

### IV. Finding of Unfitness

■ We have carefully reviewed the record and find that the State proved by clear and convincing evidence that respondent failed to make reasonable progress in any nine-month period after the adjudication and that an opposite conclusion is not clearly evident. Accordingly, we conclude that the trial court's finding that respondent was unfit was not against the manifest weight of the evidence.

### CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL and GARCIA, JJ., concur.