JjGASKINS, Judge.
The defendant, Kansas City Southern Railway Company (KCS), appeals a trial court judgment finding the railroad liable for injuries sustained by the plaintiff, Lamar Richardson, and awarding him $150,-000.00 in general damages and $525,435.00 in lost wages. For the following reasons, we reverse the trial court judgment.
FACTS
The plaintiff was a longtime employee of KCS working on a maintenance of way crew. According to the plaintiff, on Sunday night, May 13, 1990, high winds blew trees and other debris onto the train tracks from Alexandria to Winnfield, the area his crew was responsible for main *1019 taining. On Monday, May 14, 1990, while cutting limbs from a large willow tree fouling the track at milepost 149.8, in Winn Parish, the plaintiff contended that a large limb struck him on the back of the head, causing injury. The plaintiffs foreman, Gregg Miller, and a fellow laborer, Roy Peters, saw some limbs fall, but were not aware at that time that the plaintiff was injured in any way. The plaintiff claimed that immediately after the incident, he remarked that the limb hurt his neck. Mr. Peters heard the comment but Mr. Miller did not. The plaintiff claimed that he finished his shift that day and then the pain in his neck began to develop slowly. The next day, the crew worked on tightening bolts on the track. The plaintiff stated that he was not able to carry his hammer because of the pain and that his coworker, Mr. Peters, helped him complete his work that day. He stated that after he finished his shift, he went to Dr. Blackwell in Ru-sten who gave him some medication. He claimed that later that night, the pain in his neck became so intense that his wife took him to the emergency room at the Jackson Parish Hospital where he was treated and released with instructions to consult his family physician the next day. He stated that he went to Dr. Roncal on May 16, 1990, as directed. The plaintiff was off |2work from May 16, 1990 until July 15, 1990. After he returned to work, he was unable to perform his duties and eventually had cervical disc surgery in November 1990, performed by Dr. Don W. Irby, a neurosurgeon. Dr. Irby stated that the cervical disc problem was consistent with a traumatic injury to the head or neck and that the injury was fairly recent.
Interestingly, the Jackson Parish Hospital emergency room records show that the plaintiff sought treatment on May 11,1990, the Friday prior to the date of the alleged injury. The plaintiff was seen by a nurse, Diane Woods, and by the emergency room physician, Raymond Dennie. The emergency room records indicate that the plaintiff was complaining of left shoulder and elbow pain and also “neck pain for about a week.” There is no notation that the plaintiff was injured in an accident at work. Also, there are no emergency room records showing that the plaintiff sought treatment on May 15,1990.
Dr. Dennie and Nurse Woods testified at trial and positively identified their handwriting on the emergency room record. Evidence and testimony were also presented to show that both Nurse Woods and Dr. Dennie worked in the emergency room on May 11, 1990, but were not on duty on May 15,1990.
The plaintiff insisted that on the night of May 11, 1990, he was not injured and drove his son to Hammond, La. to participate in a basketball program. After leaving his son with the coach in Hammond, the plaintiff and his wife returned to their home, arriving after midnight. The plaintiff presented the testimony of the basketball coach, James E. Martin, and his wife, Bobbie Marie Martin, that the plaintiff was at their home on the evening of May 11, 1990, and the plaintiff was not complaining of any injury at that time. The plaintiff also claimed that he participated in services at his church on Sunday, May 13, 1990 and was not suffering from neck pain.
|3 After the discovery of the discrepancy in the date of the plaintiffs alleged accident and injury and the date he reportedly visited the emergency room, KCS conducted an investigation and determined that the plaintiff filed a false claim of an accident and he was terminated from employment with the railroad.
On September 30, 1991, the plaintiff filed suit against KCS under the Federal Employers’ Liability Act (FELA), 45 U.S.C. § 51 et seq., for damages resulting from his alleged injury. The plaintiff contended that KCS failed to provide a reasonably safe workplace for Mm, that the railroad was negligent in failing to adequately supervise the clearing of trees from the KCS right of way, failing to provide a sufficient crew, failing to provide adequate safety equipment and failing to *1020 adequately train personnel in how to cut trees. The plaintiff claimed that he suffered ruptured discs in his cervical spine which required surgery and which caused permanent disability. The plaintiff sought to recover for medical expenses, mental anguish, and lost wages.
The defendant filed a motion for partial summary judgment and an exception of no right of action to dismiss the plaintiffs claim for lost wages. KCS argued that on August 31,1990, the plaintiff was terminated for filing a false accident report. Two hearings were held regarding this matter, both concluding that the plaintiff filed a false report, gave false testimony at a hearing and that termination was an appropriate sanction. The plaintiff appealed under the National Railway Labor Act, 45 U.S.C. § 151 et seq., alleging he was wrongfully terminated and claiming lost wages and benefits. On September 1, 1995, the National Railroad Adjustment Board affirmed and validated the plaintiffs termination. KCS claimed that, under federal law, a railroad employee may not recover lost wages under FELA after the railroad’s discharge of that employee has been validated under the National Railway Labor Act. A ruling on this issue was deferred to the merits of the case.
_|^The matter was tried on November 7-8, 1994 and September 12-13, 1995. On June 16, 1998, the trial court entered judgment in favor of the plaintiff, awarding him medical expenses in the amount of $3,869.75, general damages in the amount of $150,000.00 and lost wages in the amount of $525,435.00. In written reasons for judgment, the trial court extensively outlined the facts of the case and the testimony presented at the trial. Regarding the discrepancy between the plaintiffs testimony that he went to the emergency room on May 15, 1990 and the emergency room records showing that the plaintiff reported there on May 11, 1990, the trial court found the plaintiff to be credible. The trial court stated, “The court acknowledges that the May 11, 1990 date is puzzling given the testimony of the hospital employees. However, the weight of direct testimony of the whereabouts of Mr. Richardson on May 11, 1990 is more convincing. The court finds the testimony of these witnesses to be credible and unbiased. The plaintiff argues that the date on the hospital record is, in all likelihood, a computer error or, a mistake made by an employee.” The court noted that on the date the accident occurred, May 14, 1990, the plaintiff remarked to Mr. Miller and Mr. Peters that he had been struck by a tree limb. The court also noted that Dr. Irby, the neurosurgeon who performed the plaintiffs disc surgery, found that the injury to the cervical discs was trauma-induced. The court then stated that the plaintiff only had to prove s light negligence on the part of KCS to prevail against the railroad.[1] The court then relied upon the statement of William Gordon, the plaintiffs expert witness, that the failure to inspect the area to be cut and the failure to stop the cutting procedure once it was determined to be dangerous were violations of the railroad’s safety rules regarding the maintenance of way.
Is The court noted that the plaintiffs medical expenses had already been largely paid by the defendant’s insurance, but that $3,869.75 was still owed and, accordingly, was owed to the plaintiff. The court also found that the plaintiff was entitled to general damages iri the amount of $150,-000.00. The court denied the motion for partial summary judgment and the exception of no right of action filed by KCS and discussed above, and awarded the plaintiff $525,435.00 in lost wages. The defendant appealed the trial court judgment.
*1021 MEDICAL RECORDS AND PROOF OF WORK RELATED ACCIDENT
The defendant argues that the trial court erred in failing to find that the records of the Jackson Parish Hospital established that the plaintiff went to the emergency room at approximately 10:20 p.m. on Friday, May 11, 1990, complaining of severe neck pain of a week’s duration, which resulted in a diagnosis of “probable cervical disc.” Essentially, the defendant contends that the trial court erred in choosing to find credible the testimony of the plaintiff and his witnesses regarding his whereabouts on the evening of May 11, 1990, rather than finding that the hospital records conclusively established when the plaintiff sought emergency room treatment.
The plaintiff seeks recovery pursuant to FELA, 45 U.S.C. § 51 which provides in pertinent part:
Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee’s parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its |ficars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
FELA represents a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and who are helpless to provide for their own safety. FELA was designed to provide a federal statutory negligence action and is a railroad employee’s exclusive remedy for workplace injuries. Broussard v. Union Pacific Railroad Company, 29,769 (La.App.2d Cir.8/28/97), 700 So.2d 542, writ denied 97-2414 (La.12/12/97), 704 So.2d 1202. State courts have concurrent jurisdiction over FELA cases, pursuant to 45 U.S.C. § 56. As a general rule, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal. St. Louis Southwestern Railway Company v. Dickerson, 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); Duhon v. Southern Pacific Transportation Company, 98-268 (La.App. 3d Cir.10/7/98), 720 So.2d 117.
An appellate court may not reverse findings of fact in a FELA case unless there is a complete absence of any probative facts to support the fact finder’s conclusions. Broussard v. Union Pacific Railroad Company, supra, and cases cited therein.
Medical records are generally considered to be inherently reliable because medical personnel rely on the information in those records in making life and death decisions. Judd v. State, Department of Transportation and Development, 95-1052 (La.11/27/95), 663 So.2d 690. There are many reasons why a medical record is reliable. There is no motive for the person whose duty it is to make the entries to do other than record them correctly and accurately. Judd v. State, Department of Transportation and Development, supra.
Due to the inherent reliability of hospital records, under Louisiana law, such records are admissible pursuant to La. R.S. 13:3714, without the necessity for 17laying a foundation. Certified medical records are to be admitted into evidence as prima facie *1022 proof of its contents. The statute provides as follows:
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.
This provision shifts the burden to the opposing party to undermine the hospital record’s credibility by cross-examining those who made the record. Judd v. State, Department of Transportation and Development, supra.
Similarly, in the federal system, Fed. R.Evid. 803(6) provides a hearsay exception for records kept in the course of any regularly conducted business activity, which include hospitals. Wilson v. Zapata Off-Shore Company, 939 F.2d 260 (5th Cir.1991).[2]
The admissibility of hospital records under this exception is supported by the presumption of reliability that attaches to statements relating to treatment and medical history in such records. Wilson v. Zapata Off-Shore Company, supra; Ricciardi v. Children’s Hospital Medical Center, 811 F.2d 18 (1st Cir.1987).
In this case, the plaintiff must first show that he was injured while working for the railroad. The plaintiff contends that he suffered an injury at work on May 14, 1990. He does not argue that he was injured on any other date. The question |Rof whether the plaintiff established that he was injured at work, as he claims, turns on hospital records concerning, treatment for the injury and live testimony as to the plaintiffs whereabouts on certain dates.
The trial court was presented with hospital records from the Jackson Parish Hospital establishing that the plaintiff sought treatment for neck pain in the emergency room on May 11,1990, not May 15, 1990 as argued by the plaintiff. The plaintiff sought to show that the hospital records were inaccurate. He claimed that the dates on the emergency room records were attributable to computer error. To support this argument, the plaintiff contended that numerous discrepancies existed in the records which called into question their veracity. In support of his claim that the dates on the hospital records were erroneous, the plaintiff presented the testimony of several witnesses to establish that he was in Hammond, Louisiana on the evening of Friday, May 11, 1990, was not injured at that time, and did not go to the emergency room until May 15, 1990 as he contends.
The plaintiff testified that on May 11, 1990, he worked all day and returned to the depot at 2:00 p.m. He then picked up his son at Winnfield Middle School and took the boy to Hammond, Louisiana to play AAU basketball. His normal routine was to take his son to Hammond to the coach, James E. Martin. On Sundays, he would go to Hammond and drive his son home. He claimed that on Sunday, May 13, 1990, the Martins brought his son home to Winnfield because the plaintiff *1023 had to attend a church function that day and could not go to Hammond.
James Martin testified that on May 11, 1990, the plaintiff arrived at his home in Hammond at around 7:00 p.m. He claims that the next weekend, he met the plaintiff in Bunkie, Louisiana with his son and the plaintiff said he had been injured.
Bobbie Marie Martin, Coach Martin’s wife, testified that on May 11, 1990, the plaintiff came to their home in Hammond late in the evening, but before dark. | flOn cross examination, Mrs. Martin was asked about deposition testimony she had given where she stated that the plaintiff arrived at her house at about 3:3(M:00 p.m. Also, even though at trial Mrs. Martin could not recall an approximate time the plaintiff was at her house, she had given a written statement which was filed into the evidence in this case, claiming that the plaintiff was at her home at 7:30 p.m.
To refute the plaintiffs claim regarding his alleged injury, the defendant, KCS, introduced the Jackson Parish Hospital emergency room records to establish that the plaintiff sought treatment on Friday, May 11, 1990, for neck pain of one week’s duration and that he did not seek treatment in the emergency room on Tuesday, May 15, 1990, as the plaintiff contends. The defendant introduced into evidence the emergency room register for the month of May 1990. This document is entirely handwritten, in the normal course of business, and is completed contemporaneously when patients report to the emergency room for treatment. Information contained in the.register includes the patient’s name, city of residence, age, sex, race, attending emergency room physician, nature of the injury, service rendered, and disposition of the case. The register also includes the assignment of a patient number. The register shows that the plaintiff reported to the emergency room at 10:15 p.m. on May 11, 1990 and was assigned patient number 2902559. The register also lists Joyce, Louisiana as the plaintiffs city of residence.
The defendant next introduced into evidence the plaintiffs emergency room record, which also shows that he reported to the emergency room at 10:15 p.m. on May 11, 1990. The record bears patient number 2902559, as assigned in the register. The record lists the plaintiffs correct name, address, phone number, social security number, age, race, sex and date of birth. The record bears the correct name for the plaintiff’s wife and the plaintiffs insurance information. All this information appears to have been generated and printed by a computer.
|in Also on the form, in Nurse Wood’s handwriting, the record shows that the plaintiffs chief complaint was pain in the left shoulder and elbow as well as “neck pain for about a week.” In Dr. Dennie’s handwriting, the record states that the physical examination revealed “pain in neck radiating into left shoulder, left arm. Tender point upper medial border of the left scapula.” A neurological examination was “O.K.-” Dr. Dennie wrote that the plaintiff was treated with an injection of depo-medrol and xylocaine at the trigger point. The plaintiff was also given medication to take. As a diagnosis, Dr. Dennie wrote, “probable acute cervical disc.” The plaintiff was instructed to go “To office on Monday for further evaluation.”
The defendant also introduced a consent to treatment form, signed by the plaintiff and witnessed by Nurse Woods, but which is not dated.
The plaintiff argued that the hospital records were incorrect as to the date he sought emergency care. He claimed that the emergency room register contains gaps in numbering. He also notes that his entry in the register is not complete because his age, sex, race, nature of injury, treatment, and disposition of the case were not filled out. However, it was shown at trial that in the emergency room register, some of the numbers were voided and were not assigned to any patient. However, all the numbering in the log is consecu *1024 tive, consistent and is not repetitive. There are no gaps in the numbering sequence in the log. Also, the register show that on other dates, the entire information is not completed for other patients, as well. On cross examination, even the plaintiff conceded that his entry in the emergency room register is not the only one that was not completely filled out. The plaintiff pointed out that one entry on May 11,1990 indicates that a patient number in the log was used for a patient that was actually admitted on May 7, 1990. We note that there is no showing that the number was duplicated or used for more than one patient. Further, the record clearly documents where and when |nthe number was used. Therefore, this does not constitute a gap, error, or discrepancy in the emergency room register and certainly has no bearing on the accuracy of the register as it pertains to the plaintiff.
The plaintiff also argues that when he arrived at the emergency room, he was told the computer was down and the paperwork would be filled out later. The plaintiff sought to argue that, because of this, the date on the emergency room register and the emergency room record was wrong. The trial court record before us for review does not support this argument. As stated earlier, the emergency room register is not a computer generated record. Therefore, the plaintiffs contention of “computer error” is not applicable to this document.
The emergency room record is a computer generated form. The relevant information regarding the plaintiff was correctly and completely filled out on this document. The document was dated May 11, 1990 and contained the patient number assigned to the plaintiff in the emergency room register on that date. Judy Andrews, the director of nursing and the assistant hospital administrator, testified that the emergency room record is generated contemporaneously as the patient is in the emergency room. Nurse Woods testified that, because of the late hour the plaintiff was in the emergency room, she would have entered into the computer all relevant information regarding the patient’s name, address, social security number, etc. There is no showing in this case that the hospital’s computer was not working on the night the plaintiff sought emergency treatment. The only handwritten information is that regarding the plaintiffs complaint and treatment which is filled in by the attending nurse and physician. There is nothing in this record to support the plaintiffs argument that the computer at the hospital was not working on the night he went to the emergency room and that, as a result, all hospital records detailing his visit contain an incorrect date.
| isThe plaintiffs argument that the date on the hospital record is incorrect is further eroded by the testimony of Ms. Andrews, Nurse Woods and Dr. Dennie, regarding the dates Woods and Dennie worked in the emergency room. The emergency room record shows, and the plaintiff does not dispute, that he was treated for neck pain by Nurse Woods and Dr. Dennie. Both Nurse Woods and Dr. Dennie positively identified their handwriting on the emergency room record. Judy Andrews was also able to identify Dr. Den-nie’s handwriting on the record. Nurse Woods and Dr. Dennie testified that they worked in the emergency room on May 11, 1990 but not on May 15, 1990, the date the plaintiff claims he was treated. The date worked by Nurse Woods and Dr. Dennie was further confirmed by the personnel records, testified to by Judy Andrews. Also, as stated above, Dr. Dennie wrote on the emergency room record that the plaintiff was instructed to go to the office on Monday for further evaluation. The notation lends credence to the argument that the plaintiff was in the emergency room on Friday night, not Tuesday night.
We also note that the plaintiff testified that he consulted Dr. Roncal on May 16, 1990, the day after he alleges he sought emergency room treatment. Dr. Roncal’s *1025 notes were introduced into evidence and show that the plaintiff complained of an injury at work on May 14, 1990 and gave a history of having seen Dr. Blackwell the day before, on May 15, 1990, where he was given Naprosyn. However, there is no mention in this record of the plaintiff having been treated in the emergency room on the night of May 15,1990.
The plaintiff also introduced into evidence a bill from the Jackson Parish Hospital for services rendered on dates other than May 11, 1990 or May 15, 1990. The plaintiff points out that several late charges were added to the bill on “7/2/60.” The other late charges all accrued in 1990. Obviously the 7/2/60 date is an error. However, we fail to subscribe to the plaintiff’s argument that, because a computer |13error was shown on charges unrelated to the dates in question here, the dates in the emergency room register and record as to when the plaintiff sought treatment are also in error.
We are here confronted with witnesses who testified that the plaintiff was in another city on the evening of May 11, 1990 and by emergency room records showing that the only date the plaintiff sought treatment for neck pain was May 11, 1990. The plaintiff has failed to show that the date in the hospital records is inaccurate. The discrepancy in the dates urged by the plaintiff is implausible and is not supported by the record. Further, the plaintiff does not dispute that he was treated by Nurse Woods and Dr. Dennie. However, based upon hospital personnel records and the testimony of the doctor and the nurse, it is not possible that the plaintiff was treated by Woods and Dennie on May 15,1990, the date alleged by the plaintiff. This fact cannot be discounted by resort to any argument regarding computer or employee error.
Further, there has been no allegation or showing that the hospital intentionally falsified records in this case or what motive the hospital would have for such an action. As stated above, medical records are considered to be inherently reliable. In this case, the trial court finding in favor of the plaintiff is based upon the plaintiffs argument that the dates in the emergency room register and record were the result of an error by a computer or by a hospital employee. After a careful analysis of all the evidence and testimony presented in this case, we are compelled to find that there is a complete absence of probative facts to support the fact finder’s conclusion in this regard. The hospital records clearly and indisputably show that the plaintiff sought treatment for neck pain in the emergency room of the Jackson Parish Hospital on May 11, 1990, not on May 15, 1990 as he claims. At that time, he made no complaint of a work-related injury. Therefore, the trial court erred in finding that the plaintiff suffered an injury at |14work on May 14, 1990, as he claims. Therefore, we must reverse the trial court judgment. Because we find that the plaintiff has not proven an injury at work, thus defeating his claim for damages, we do not reach the additional assignments of error raised by the defendant.
CONCLUSION
For the reasons stated above, we reverse the judgment of the trial court in favor of the plaintiff, Lamar Richardson, and enter judgment in favor of the defendant, KCS Railway Company, rejecting the plaintiffs demands. All costs in this court and in the court below are assessed to the plaintiff.
REVERSED AND RENDERED.
NORRIS, J., concurs in the result.

. Although we do not ultimately reach a discussion of this issue, we note that the trial court's statement regarding a FELA plaintiffs burden of proof is contrary to Gautreaux v. Scurlock Manne, Inc., 107 F.3d 331 (5th Cir.1997); and Duhon v. Southern Pacific Transportation Company, 98-268 (La.App. 3d Cir. 10/7/98), 720 So.2d 117.

. Fed.R.Evid. 803(6) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(6) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business” as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.