JOHN PAUL TROYAN, Plaintiff-Appellant, v. DANA REYES, Defendant-Appellee.

Third District    No. 3—05—0132

Opinion filed September 29, 2006.

Scott Pyles (argued), of Krockey, Cernugel, Cowgill, Clark & Pyles, Ltd., of Joliet, for appellant.

Raymond P. Fabricius (argued), of Pool, Leigh & Fabricius, of Ottawa, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff, John Paul Troyan, filed suit against defendant, Dana Reyes, for damages he sustained as the result of an automobile ac-

cident. The jury found in favor of plaintiff and awarded him $1,681.76 in damages. We reverse and remand.

In 1993, plaintiff and defendant were involved in an automobile accident. Immediately after the accident, plaintiff went to the emergency room at Provena St. Joseph Medical Center. At the emergency room, he was given pain medication and referred to an orthopedic specialist for follow-up treatment. Plaintiff received follow-up treatment from Dr. Hiroshi Eguro a few days later. Dr. Eguro prescribed physical therapy for plaintiff, which he received from Marge Taylor at MedRehab, a rehabilitation center.

In 1995, plaintiff filed suit against defendant. In 1998, plaintiff voluntarily dismissed his suit. In 1999, plaintiff timely refiled his action. In 2000, plaintiff sent defendant requests to admit, among other things, the following facts:

"4. That as a result of the collision, Plaintiff suffered $4,052.38 in medical bills that were reasonable and customary charges related to Plaintiff's injuries.

5. That as a result of the collision, Plaintiff suffered a traumatic cervical strain.

6. That the medical records of St. Joseph Medical Center, MedRehab of Illinois, and Hiroshi Eguro, M.D. were kept in the ordinary course of business at each medical facility.
　***

8. That as a result of the collision, Plaintiff suffered a permanent injury to his cervical spine."

Defendant objected to the above requests to admit as requests for opinions, adding that they requested facts about which she had "no personal knowledge or information." She further responded:

"[T]his request pertains to matters protected by the physician/patient privilege. Therefore, the Defendant, DANA C. REYES, is unable upon reasonable inquiry to admit or deny the facts set forth in Request to Admit or Deny Number[s] [4, 5, 6 and 8]."

Plaintiff filed a motion to strike defendant's responses and to deem the facts contained in the requests admitted. The trial court denied plaintiff's motion.

At trial, neither Dr. Eguro nor Marge Taylor was available to testify. Dr. Eguro was deceased, and Marge Taylor had moved and could not be located. Plaintiff called the recordkeepers from Provena St. Joseph Medical Center and Dr. Eguro's office, who testified that the records were created and kept in the ordinary course of business. The trial court found that the foundational requirements were met and admitted the medical records into evidence. In pertinent part, those records consisted of (1) medical records from Dr. Eguro dated November 9, 1993; (2) medical records from Dr. Eguro dated January

4, 1994; (3) a medical report from Dr. Eguro dated July 14, 1994; (4) a report from MedRehab written by Marge Taylor; and (5) a radiology report from Dr. Robert E. Boyd of Provena St. Joseph Medical Center.

Plaintiff's attorney sought to present the records to the jury during his closing argument, and defendant objected. The trial court did not allow plaintiff to present to the jury any of Dr. Eguro's 1994 medical records or Dr. Boyd's radiology report. Plaintiff was allowed to present to the jury redacted versions of Marge Taylor's report and Dr. Eguro's 1993 medical records, containing only plaintiff's subjective statements to the medical providers. The redacted portions of the records contained the observations, assessments, diagnoses and impressions of Dr. Eguro, Ms. Taylor and Dr. Boyd.

At trial, plaintiff testified that his neck was injured as a result of the automobile accident with defendant. He received medical treatment from Dr. Eguro and Ms. Taylor for approximately four or five months following the accident, until April or May of 1994. After that, plaintiff's injuries resolved except for occasional headaches. He testified that he incurred $4,131.66 in medical expenses for treatment he received as a result of the accident.

The jury returned a verdict in favor of plaintiff and determined that the total amount of damages suffered by plaintiff was $2,402.52, itemized as follows: $0 for loss of normal life; $0 for pain and suffering; $359.92 for medical expenses; and $2,042.60 for property damages. The jury found that plaintiff was 30% negligent; therefore, plaintiff's damages were reduced by 30% to $1,681.76. Plaintiff filed a motion for a new trial on the issue of damages only. The trial court denied the motion.

## I. MEDICAL RECORDS

Plaintiff argues that the trial court erred by refusing his request to publish his medical records to the jury. Specifically, he wants us to determine whether his medical records containing opinions and diagnoses should have been published to the jury under the business records exception.

Relevant evidence, which tends to prove a fact in controversy or renders a matter in issue more or less probable, is generally admissible. *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 797, 776 N.E.2d 262, 295 (2002). A trial court's decision regarding the presentation of evidence to a jury is reviewed under an abuse of discretion standard. See *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882, 922, 588 N.E.2d 1193, 1219 (1992). If a trial court abuses its discretion, a new trial should be ordered only if the exclusion of evidence appears to have affected the outcome of the trial. See

*Schmidt v. Ameritech Illinois*, 329 Ill. App. 3d 1020, 1040-41, 768 N.E.2d 303, 320 (2002).

■ In Illinois, business records are admissible as an exception to the hearsay rule. 145 Ill. 2d R. 236(a). Illinois Supreme Court Rule 236 provides:

> "Any writing or record *** made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility." 145 Ill. 2d R. 236(a).

In 1992, the Illinois Supreme Court amended Rule 236 to allow medical records to be treated as any other business record. See 145 Ill. 2d R. 236(b), Committee Comments. Medical records are now admissible in Illinois courts as long as a sufficient foundation is laid to establish that they are business records. See *LoCoco v. XL Disposal Corp.*, 307 Ill. App. 3d 684, 689-90, 717 N.E.2d 823, 828 (1999); *Lecroy v. Miller*, 272 Ill. App. 3d 925, 935, 651 N.E.2d 617, 623 (1995).

In order to fulfill the foundational requirements of a business record, it is not necessary that the author or creator of the record testify or be cross-examined about the contents of the record. See *Lecroy*, 272 Ill. App. 3d at 935-36, 651 N.E.2d at 624. "[T]he circumstantial probability of their trustworthiness is a practical substitute for cross-examination of the individual making the entries." *People v. Wells*, 80 Ill. App. 2d 187, 194, 224 N.E.2d 288, 292 (1967). A custodian or any person familiar with the business and its mode of operation may provide testimony establishing the foundational requirements of a business record. *In re Marriage of Fields*, 283 Ill. App. 3d 894, 905, 671 N.E.2d 85, 92 (1996). That the author of a record does not testify affects only the weight, not the admissibility, of the record. See 134 Ill. 2d R. 236(a).

Once a witness has established the foundational requirements of a business record, "[t]he records themselves should be introduced." *Smith v. Williams*, 34 Ill. App. 3d 677, 680, 339 N.E.2d 10, 13 (1975). Business records should only be barred from admission if they are irrelevant, prejudicial or for some other legally appropriate reason. See *In re A.B.*, 308 Ill. App. 3d 227, 719 N.E.2d 348 (1999).

Business records are an exception to the hearsay rule because of their inherent trustworthiness and reliability. See *Eastman v. Depart-*

*ment of Public Aid*, 178 Ill. App. 3d 993, 998, 534 N.E.2d 458, 462 (1989); *People v. Smith*, 141 Ill. 2d 40, 73, 565 N.E.2d 900, 914 (1990). "The rationale for the business-records exception is that in carrying on the proper transactions of business, business records are useless unless accurate, making the motive to follow a routine of accuracy great while making the motive to falsify nonexistent." *People v. Peterson*, 150 Ill. App. 3d 782, 786, 502 N.E.2d 450, 454 (1986).

■ Like other business records, medical records are "inherently reliable." *People v. Trotter*, 178 Ill. App. 3d 292, 297, 533 N.E.2d 89, 92 (1988); *Bolton v. BE&K Construction*, 822 So. 2d 29, 34 (La. App. 2002); see also *United States v. Woods*, 970 F. Supp. 711, 720 (D. Minn. 1997). They are reliable because they are generated by those who have no reason to prevaricate and must rely on their accuracy:

> "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Secretary of the Department of Health & Human Services*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The same reasoning applies to diagnoses and opinions contained in medical records. Diagnoses should be admissible to the same extent as objective facts because a diagnosis "is the major premise from which the physician draws his conclusions as to the proper treatment to be rendered; normally, the progress of the patient depends upon its accuracy." *Falcone v. New Jersey Bell Telephone Co.*, 98 N.J. Super. 138, 149, 236 A.2d 394, 400 (1967). Medical providers are motivated as professionals to reach their diagnoses, opinions, and conclusions as conscientiously and accurately as possible. See *Manocchio v. Moran*, 919 F.2d 770, 781 (1st Cir. 1990). Since the diagnoses are an integral part of plaintiff's medical records, the same indicia of reliability that inures to business records in general apply to opinions contained in the medical records because the opinions are worthless unless accurate. See generally *Birch v. Township of Drummer*, 139 Ill. App. 3d 397, 406, 487 N.E.2d 798, 805 (1985).

Medical records containing diagnoses and opinions are trustworthy because "there is no more reason to expect doctors to render an unreliable diagnosis than there is to expect them to base diagnoses on untrustworthy facts." J. McLauglin, Weinstein's Federal Evidence §803.08[6][d], at 803-73 (2d ed. 2006). "[R]ecords containing statements of medical opinions constitute a 'firmly rooted exception' to the hearsay rule." *Manocchio*, 919 F.2d at 780, quoting Fed. R. Evid. 803. As such, their reliability is inferred. See *Zaragoza v. Ebenroth*, 331 Ill.

App. 3d 139, 142, 770 N.E.2d 1238, 1242 (2002) (reliability is inferred where the evidence falls within a firmly rooted hearsay exception).[1]

Because of their inherent reliability and trustworthiness, we hold that diagnoses and opinions contained in medical records should be admissible and published to the jury as a proper part of the business records exception to the hearsay rule.

Our decision is in accord with a large and growing national trend. The federal courts and at least 35 states allow the admission of records containing diagnoses or opinions either by statute, rule or case law.[2]

---

[1]Evidence not falling under a firmly rooted hearsay exception, such as the business records exception, may be admissible if it possesses guarantees of trustworthiness. See *People v. Bueno*, 358 Ill. App. 3d 143, 152, 829 N.E.2d 402, 409 (2005). Even if we were to find that the opinions contained in the records did not fit under the business records exception to the hearsay rule, we would conclude that they were sufficiently trustworthy and, thus, admissible. In evaluating the trustworthiness of an out-of-court statement offered for the truth of the matter asserted, courts will consider whether (1) the declarant had a motive to fabricate; (2) the statements are written or oral; (3) the statements are contradicted by direct evidence; and (4) the declarant is available to testify. See 18 Ill. L. & Prac. §124, at 355 (2003).

Each of the four factors weighs in favor of the records' trustworthiness and reliability. First, plaintiff's medical providers had no reason to fabricate or inaccurately record their observations, opinions and impressions of plaintiff and his medical condition. See *Richardson v. Kansas City Southern Ry. Co.*, 731 So. 2d 1017, 1021 (La. App. 1999) ("There is no motive for the person whose duty it is to make the entries to do other than record them correctly and accurately"). Second, the medical providers' statements were written and recorded in plaintiff's medical records to become a part of plaintiff's permanent medical history. Third, the opinions and diagnoses contained in the medical records are not contradicted by any other evidence. Finally, Dr. Eguro and Ms. Taylor were not available to testify, as Dr. Eguro was deceased and Ms. Taylor could not be located. Thus, we find that these records would be admissible as trustworthy evidence even absent the firmly rooted business records exception to the hearsay rule.

[2]See Fed. R. Evid. 803(6); Ala. R. Evid. 803(6); Alaska R. Evid. 803(b); Ark. R. Evid. 803(6); Ariz. R. Evid. 803(6); *River Dock & Pile, Inc. v. O&G Industries, Inc.*, 219 Conn. 787, 799, 595 A.2d 839 (Conn. 1991) (construing Conn. Gen. Stat. §52—180); Colo. R. Evid. 803(6); Del. R. Evid. 803(6); Haw. R. Evid. 803(6); Idaho R. Evid. 803(b); Ind. R. Evid. 803(6); Iowa R. Evid. 803(6); Ky. R. Evid. 803(6); La. Code Evid. Art. 803(6); Me. R. Evid. 803(6); Md. R. 5—803(6); Mich. R. Evid. 803(6); Minn. R. Evid. 803(6); Miss. R. Evid. 803(6); Mont. R. Evid. 803(6); N.H. R. Evid. 803(6); Nev. Rev. Stat. §51.35; N.J. R. Evid. 803(c)(6); N.M. R. Rev. 11—803, N.C. R. Evid. 803(6); N.D. R. Evid. 803(6); Okla. Stat. Ann. §2803(6); Or. Rev. Stat. §40.460(6); R.I. R. Evid.

See 5 C. Fishman, Jones on Evidence §33:4, at 103-13 (7th ed. 2003). Similarly, Illinois courts have held that "Rule 236(a) does not bar the admission of business records because they contain opinions." *Birch*, 139 Ill. App. 3d at 407, 487 N.E.2d at 806 (safety study that contained opinions was admissible business record); see also *Amos v. Norfolk & Western Ry. Co.*, 191 Ill. App. 3d 637, 646, 548 N.E.2d 96, 102 (1989) (accident reports containing conclusions and opinions fall within business records exception); *People ex rel. Schacht v. Main Insurance Co.*, 122 Ill. App. 3d 826, 833, 462 N.E.2d 670, 675 (1984) (financial documents containing opinions were proper business records).[3]

Our holding, however, does not give parties free rein to introduce medical records as a substitute for expert medical testimony. Like all business records, medical records may be excluded if they are not relevant or are too complex for the jury to understand on its own. See 2 J. Strong, McCormick on Evidence §293, at 266 (5th ed. 1999). Additionally, medical testimony is often required to establish a *prima facie* case of negligence. See *Voykin v. Estate of DeBoer*, 306 Ill. App. 3d 689, 694, 714 N.E.2d 607, 610 (1999) (medical testimony is generally necessary to establish causation in a negligence case).

Furthermore, our ruling contains some self-limiting features. If the declarant is available, the adversary may call the declarant to testify and bring out any weaknesses in the diagnosis. See *Manocchio*, 919 F.2d at 781, citing 2 J. Strong, McCormick on Evidence §290, at 613 (1954). Also, the opposing party may call an expert to show the shortcomings of the diagnoses and opinions. See *Manocchio*, 919 F.2d at 781, citing Weinstein's Evidence par. 803(6)[06], at 803—198, 803—199 (1990).

■ In this case, the trial court prohibited plaintiff from publishing the records to the jury because Dr. Eguro and Marge Taylor were not available to testify about the opinions contained therein. The trial court relied on *Kelly v. HCI Heinz Construction Co.*, 282 Ill. App. 3d 36, 668 N.E.2d 596 (1996), where the appellate court held that medical records could not be admitted as evidence without "live testimony." Citing McCormick, the *Kelly* court stated that federal courts are "reluctant" to allow an opinion that is not subjected to cross-examination. *Kelly*, 282 Ill. App. 3d at 42, 668 N.E.2d at 600, citing J.

---

803(6); S.D.C.L. §19—16—10; Tenn. R. Evid. 803(6); Texas R. Evid. 803(6); Utah R. Evid. 803(6); Vt. R. Evid. 803(6); W. Va. R. Evid. 803(6); Wis. Stat. Ann. §90.803(6); Wyo. R. Evid. 803(6).

[3]A business record containing opinions or conclusions affects the weight, not the admissibility, of the record. See *Birch*, 139 Ill. App. 3d at 407; *Amos*, 191 Ill. App. 3d at 646; *Schacht*, 122 Ill. App. 3d at 833.

Strong, McCormick on Evidence §293, at 281 (5th ed. 1999). *Kelly* also relied on *People v. Smith*, 141 Ill. 2d 40, 74, 565 N.E.2d 900, 915 (1990), which concluded that prison incident reports do not qualify as business records.

We disagree with *Kelly* for two reasons. First, McCormick does not state that federal courts are reluctant to allow the introduction of medical records containing opinions, such as diagnoses. On the contrary, such records are regularly and properly admitted as business records without expert testimony under Rule 803(6). See *Sosna v. Binnington*, 321 F.3d 742, 747 (8th Cir. 2003); *Manocchio v. Moran*, 919 F.2d 770, 780-82 (1st Cir. 1990); *Norton v. Colyer*, 828 F.2d 384, 386-87 (6th Cir. 1987); *Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 497 (10th Cir. 1985); *J.W. v. Contoocook Valley School District*, 154 F. Supp. 2d 217, 230 (D.N.H. 2001). McCormick properly states that federal courts can exclude opinions when they are irrelevant or their probative value is outweighed by the danger that the jury will be misled or confused (J. Strong, McCormick on Evidence §293, at 266 (4th ed. 1992), citing Fed. R. Evid. 403; see also Fed. R. Evid. 402), or when medical records involve difficult matters of interpretation or a central dispute in the case, such as causation. See J. Strong, McCormick on Evidence §293, at 266 (4th ed. 1992); see for example *Nauni v. State*, 670 P.2d 126, 131 (Okla. App. 1983) (complex and speculative diagnoses of psychiatric conditions); *Skogen v. Dow Chemical Co.*, 375 F.2d 692 (8th Cir. 1967) (physician's opinion as to the cause of plaintiff's illness). McCormick's discussion of these evidentiary qualifications does not indicate a "reluctance" by the federal courts to follow the Federal Rules of Evidence; it merely acknowledges the evidentiary limitations of Rule 803(6).

Second, we find *Kelly*'s reliance on *Smith* misplaced. *Smith* involved prison incident reports, which the Illinois Supreme Court found were not admissible under the business records exception because they "lack the necessary earmarks of trustworthiness and reliability generally attendant to regularly kept business records." *Smith*, 141 Ill. 2d at 73, 565 N.E.2d at 914. Unlike prison incident reports, medical records are considered trustworthy because they are made to assist and document a patient's treatment. See *FENCL-TUFO Chevrolet, Inc. v. Industrial Comm'n*, 169 Ill. App. 3d 510, 523 N.E.2d 926 (1988); *Tendai v. Missouri State Board of Registration for the Healing Arts*, 161 S.W.3d 358, 366 (Mo. 2005).

Since we have found that the medical records containing the opinions and diagnoses of Dr. Erugo and Marge Taylor are admissible under the business record exception to the hearsay rule, we must now determine if they are relevant or are too complex for the jury to

understand on its own. See *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 797, 776 N.E.2d 262, 295 (2002) (explaining that only relevant evidence is admissible); *Clark v. Hoosier Casualty Co. of Indianapolis*, 319 Ill. App. 202, 205, 48 N.E.2d 787, 788 (1943) (excluding medical records that were "unintelligible without translation by a medical expert"). Based on our review of the records, we find that the jury could have easily understood the opinions and diagnoses contained in Dr. Eguro's and Marge Taylor's November 1993 and January 1994 records. Those records do not contain difficult medical terminology or opinions. Additionally, we find that the records are relevant because plaintiff testified that he received treatment for injuries related to the accident during those visits. Thus, the trial court abused its discretion by not allowing the jury to see those records.

However, it is not clear from the record if Dr. Eguro's July 1994 medical report is relevant to plaintiff's injuries in this case. Since plaintiff testified that he finished his treatment with Dr. Eguro in April or May of 1994 and the report does not specifically refer to the accident, the July 1994 report may not apply to the matter in question. On remand, the trial court must determine the relevancy of the July 1994 report.

Finally, we hold that the trial court properly prohibited plaintiff from presenting Dr. Boyd's radiology report. Plaintiff's attorney conceded, and we agree, that Dr. Boyd's radiology report contains complicated medical terminology. As a result, that record was likely too complex and confusing to aid the jury absent medical testimony. See *Clark*, 319 Ill. App. at 205, 48 N.E.2d at 788; *Nauni*, 670 P.2d at 131.

Having found that the trial court abused its discretion, we must now determine if the outcome of the trial was affected. See *Schmidt*, 329 Ill. App. 3d at 1040-41, 768 N.E.2d at 320. Plaintiff testified that he incurred $4,131.66 in medical bills for treatment he received in the five months following the accident. Nevertheless, the jury awarded him only $359.92 in medical expenses, apparently for the treatment he received on the day of the accident. It appears likely that the jury's award of only a small portion of plaintiff's total medical expenses resulted from the jury's inability to review plaintiff's medical records. According to those records, plaintiff suffered cervical injuries from the accident that required medical treatment and physical therapy for a period of five months. Furthermore, without the opinions and diagnoses of the medical professionals who treated plaintiff, the jury could not fully understand the extent of plaintiff's injuries. Thus, the trial court's exclusion of the records likely affected the outcome of the trial and deprived plaintiff of the opportunity to fully prove his case.

Thus, plaintiff is entitled to a new trial. See *Schmidt,* 329 Ill. App. 3d at 1040-41, 768 N.E.2d at 320.

## II. PLAINTIFF'S REQUESTS TO ADMIT

Plaintiff also contends that the trial court erred by refusing to deem admitted numbers 4, 5, 6 and 8 of his requests to admit. We review *de novo* the trial court's denial of plaintiff's motion to deem admitted certain requests. See *Robertson v. Sky Chefs, Inc.,* 344 Ill. App. 3d 196, 199, 799 N.E.2d 852, 855 (2003).

■ Illinois Supreme Court Rule 216 allows a party to serve on any other party "a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request." 134 Ill. 2d R. 216(a). A request to admit is proper if it relates to statements or opinions of fact or the application of law to fact. See *P.R.S. International, Inc. v. Shred Pax Corp.,* 184 Ill. 2d 224, 236, 703 N.E.2d 71, 77 (1998). Requests seeking conclusions or opinions of law are improper. See *People v. Mindham,* 253 Ill. App. 3d 792, 798, 625 N.E.2d 835, 840 (1993). However, "requests for admissions of factual questions which might give rise to legal conclusions are not improper." *P.R.S. International,* 184 Ill. 2d at 236, 703 N.E.2d at 77.

"[A] request for admissions is proper if a finder of fact must take some analytical step, no matter how small, from the contents of the admissions to the final conclusion that the party seeks to establish." *Hubeny v. Chairse,* 305 Ill. App. 3d 1038, 1043-44, 713 N.E.2d 222, 226 (1999). The amount of medical expenses a plaintiff incurred as a result of an event, the necessity and reasonableness of medical services, and the fair reasonable cost of medical services rendered are all proper subjects for requests to admit. See *Szczeblewski v. Gossett,* 342 Ill. App. 3d 344, 346-48, 795 N.E.2d 368, 370-71 (2003); *Hubeny,* 305 Ill. App. 3d at 1044, 713 N.E.2d at 226.

■ A party responding to a request to admit must (1) admit the factual matter; (2) deny the factual matter; (3) explain why he cannot truthfully admit or deny the factual matter; or (4) object on the ground that some or all of the requested admission is privileged, irrelevant or otherwise improper. See 134 Ill. 2d R. 216(c). "[A] party has a good-faith obligation to make a reasonable effort to secure answers to requests to admit from persons and documents within the responding party's reasonable control." *Szczeblewski,* 342 Ill. App. 3d at 349, 795 N.E.2d at 372.

■ In this case, plaintiff asked defendant to admit that (1) the cost of plaintiff's medical treatment related to the accident was reasonable; (2) plaintiff suffered a certain injury from the accident; (3) plaintiff's injury was permanent; and (4) the records of various medical provid-

ers were kept in the ordinary course of business. Defendant objected to these requests, claiming that they called for opinions. She also claimed that she lacked personal knowledge to admit or deny the matters and could not investigate further because they were protected by the physician/patient privilege.

These requests sought the admission of facts that are proper subjects for requests to admit. See *Szczeblewski*, 342 Ill. App. 3d at 346-48, 795 N.E.2d at 370-71; *Hubeny*, 305 Ill. App. 3d at 1044, 713 N.E.2d at 226. Thus, defendant's objection that these requests called for an "opinion" was improper.

Defendant also asserted that the requests were protected by the physician/patient privilege. However, the physician/patient privilege does not apply because plaintiff filed this lawsuit placing his physical condition in issue. See 735 ILCS 5/8—802(4) (West 2002); *Galindo v. Riddell, Inc.*, 107 Ill. App. 3d 139, 148, 437 N.E.2d 376, 383 (1982). Further, plaintiff already provided defendant with all of his medical records and bills. Thus, the physician/patient privilege did not prohibit defendant from responding to the requests.

On remand, the trial court should allow defendant to amend her responses.

## III. JURY'S AWARD OF DAMAGES

Finally, plaintiff contends that the jury's award of damages was against the manifest weight of the evidence. In light of our decision to reverse and remand this case for a new trial, it is unnecessary for us to determine whether the jury's award of damages was against the manifest weight of the evidence.

## IV. CONCLUSION

The order of the circuit court of Will County is reversed and remanded.

Reversed and remanded.

O'BRIEN, J., concurs.

JUSTICE McDADE, dissenting:

The majority has reversed the jury's award in the present case and has remanded for a new trial. The foundation for this decision is a finding that plaintiff, John Paul Troyan, was deprived of a fair trial because the circuit court of Will County (1) allowed the admission of plaintiff's medical records pursuant to the business records exception to the hearsay rule, but required that certain opinions and conclusions be redacted prior to publication to the jury, and (2) erred in refusing

to deem certain facts admitted because of the improper nature of defendant's responses to four of plaintiff's requests to admit. For the reasons that follow, I dissent from both of these conclusions.

*Admission of Opinions Through Business Records Exception*

In making its decision to redact medical opinions and conclusions from plaintiff's medical records before they were circulated to the jury, the circuit court, in a proper exercise of its discretion, acted in full accord with decades of precedent concerning the Illinois Supreme Court's discovery rules which establish, *inter alia*, the ground rules for the admission of expert and opinion testimony. In reversing, the majority discounts all of that jurisprudence to render a decision "in accord with a large and growing national trend" of the federal courts and those of 35 other states. 367 Ill. App. 3d at 735.

The business records exception to the hearsay rule is set out in Supreme Court Rule 236 as follows:

> "Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible *as evidence of the act, transaction, occurrence, or event* if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter." (Emphasis added.) 145 Ill. 2d R. 236(a).

The legislative purpose of Rule 236 was to make the production of the original entrant unnecessary because of the routine character of the business entries themselves. *Benford v. Chicago Transit Authority*, 9 Ill. App. 3d 875, 878, 293 N.E.2d 496, 499 (1973). Application of the rule requires the court to determine whether documents tendered for admission can be properly admitted as business records despite the fact that they are otherwise inadmissible hearsay. The result of a favorable evaluation is that the records are admitted because they document routine matters that are kept in the normal course of business and can be presumed accurate. Under the business records exception, we would accept that the records at issue in the present case, and the statements of opinion included in them, have been adequately and appropriately preserved.

It should be noted that the trial judge in the present case admitted all portions of the records that established the fact of the act, transaction, occurrence or event of plaintiff's consultation with and treatment by his medical treaters as set out in Rule 236, and permitted them to be published to the jury. What he did not allow was dissemination of the medical opinions, diagnoses and statements of causation that were included in those records.

Although we would accept that the conclusions of Dr. Hiroshi Eguro and physical therapist Marge Taylor are accurately reflected in those records, they do not fit within the policy of Rule 236. They are not routine; they do not simply document an occurrence, but are instead reflections of conclusions distinctively associated with the original entrant. To allow the introduction of such substantive opinion evidence with only the minimal testimony of a custodian would be an unwarranted and illogical extension of the rule and its stated purpose. In addition, it would not only preclude examination of the qualifications of the "experts" to formulate the opinions but also examination of the analysis or procedures resulting in the conclusions noted in the record. Accordingly such opinions and conclusions should—indeed must—be treated differently.

Accurate reflection of opinions and conclusions in the business records is not the issue in this case. The fundamental issue is the reliability of the *substance* of the included medical conclusions which necessarily requires consideration of the opportunity to test that substance through discovery and cross-examination. We have to ask whether the purposes of discovery—to enhance the true function of the trial as a means of ascertaining truth and to provide methods for prompt and just disposition of litigation (*Stimpert v. Abdnour*, 24 Ill. 2d 26, 179 N.E.2d 602 (1962)); to effectuate the prompt and just disposition of litigation by educating the parties in advance of trial as to the real value of their claims and defenses (*People ex rel. Terry v. Fisher*, 12 Ill. 2d 231, 145 N.E.2d 588 (1957)); to enable attorneys to better prepare and evaluate their cases (*Biehler v. White Rolling Metal & Stamping Corp.*, 30 Ill. App. 3d 435, 333 N.E.2d 716 (1975))—have been adequately fulfilled. And, if not, whether the "expert" advancing the diagnosis or conclusion will be made available for cross-examination at trial.

In the present case, plaintiff has attempted to tender the "expert, opinion testimony" of Dr. Eguro and therapist Taylor through the admission of medical records. Because Dr. Eguro is dead and Ms. Taylor is missing, defendant Dana Reyes (1) cannot serve the interrogatories authorized by Rule 213(f) (210 Ill. 2d R. 213(f)) to elicit the exact nature of their conclusions *"and the bases therefor"*; (2) cannot take the depositions allowed by Rules 201 (210 Ill. 2d R. 201); 202 (166 Ill. 2d R. 202); and 210 (134 Ill. 2d R. 210) to further flesh out, test and challenge the opinions and the bases for them; (3) cannot, because of the absence of information that could be discerned or firmed up through interrogatories, depositions, and other forms of discovery, adequately select, brief, and utilize an expert of her own; (4) cannot

request and secure admissions of fact relevant to the bases for those opinions as allowed by Rule 216 (134 Ill. 2d R. 216); and (5) cannot cross-examine either witness in deposition or at trial to test or challenge their opinions and conclusions.

Thus the real question facing the trial court (and this appellate panel) in this case is not whether the business records accurately reflect the challenged opinions and conclusions but rather whether there has been a fair opportunity for the opposing party to discover the exact nature of and bases for the conclusions and to submit them for evaluation by another expert.

It is the duty and responsibility of the trial court to ensure the integrity of the litigation. To that end, the trial judge is vested with, among other powers, the discretion to oversee and require compliance with the rules and purposes of discovery, to impose sanctions for noncompliance and to determine, in light of those rules, what evidence can be properly and fairly admitted at trial. See generally (210 Ill. 2d Rs. 201, 213, 219). In making those decisions, the test for the trial courts is reliability, not mere reporting accuracy.

In *Decker v. Libell*, 193 Ill. 2d 250, 737 N.E.2d 623 (2000), the supreme court stated:

> "Trial courts routinely bar evidence because it is irrelevant or unreliable, and we see no reason to apply a different rule in this context [whether the age of prognosis affects admissibility]. Under this approach, the trial judge serves in a familiar role as 'gatekeeper,' barring testimony that is not sufficiently relevant or reliable to be admitted into evidence." *Decker v. Libell*, 193 Ill. 2d at 254.

In so finding, the court said, "[w]e believe the better view, however, is represented by the cases that first consider whether the testimony or evidence is admissible and, if it is, then permit the trier of fact to determine what weight to assign to it." *Decker v. Libell*, 193 Ill. 2d at 253-54. The court then referred with approval to the approach followed in *Soto v. Gaytan*, 313 Ill. App. 3d 137, 728 N.E.2d 1126 (2000), among others.

In *Soto* the appellate court examined case law concerning the *admissibility* of an expert's testimony, particularly that by medical treaters, and noted that "as the gatekeeper of expert opinions disseminated to the jury, the trial court plays a critical role in excluding testimony that does not bear an adequate foundation of *reliability*." (Emphasis added.) *Soto*, 313 Ill. App. 3d at 147.

Reliability of an opinion derives not from the fact that it was ac-

curately retained in a business record but rather from whether its *substance and foundation* have been or can be subjected to the truth-seeking processes of our adversarial system and is thus appropriate for submission to the jury. *La Salle National Bank v. Malik*, 302 Ill. App. 3d 236, 241, 705 N.E.2d 938, 942 (1999) (holding that only through cross-examination can the reliability or sufficiency of an expert's opinion be established so that the trier of fact can then determine the weight to accord the expert's opinion). That, in my opinion, is the difference between admission under the business records exception and admission under the standards of reliability that are implemented by discovery and by cross-examination at trial.

The trial judge in the instant case admitted the medical records. However, consistent with his judicial obligations, he also recognized that the medical opinions and conclusions that could not be subjected to the discovery processes or to cross-examination were unreliable and inadmissible and he required them to be redacted from plaintiff's medical records prior to their publication to the jury. It seems abundantly clear to me that he acted properly, responsibly and consistently with long-standing Illinois law in so doing.

His decision on this issue was a proper exercise of discretion and should be affirmed. I, therefore, dissent from the majority's contrary opinion.

*Responses to Requests to Admit*

Plaintiff has also challenged the decision of the trial judge not to deem certain facts admitted, claiming that defendant's responses to four of his Rule 216 Requests to Admit were improper and insufficient. The majority agrees and reverses the trial court on this issue as well.

Plaintiff's requests to admit are as follows:

"4. That as a result of the collision, Plaintiff suffered $4,052.38 in medical bills that were *reasonable and customary charges related to plaintiff's injuries*.

5. That *as a result of the collision*, Plaintiff suffered a *traumatic cervical strain*.

6. That the medical records of St. Joseph Medical Center, MedRehab of Illinois, and Hiroshi Eguro, M.D., were kept in the ordinary course of business at each medical facility.
        * * *
8. That *as a result of the collision*, plaintiff suffered a *permanent injury* to his cervical spine." (Emphasis added.)

Defendant's response to plaintiff's request to admit are as follows:

"4. Objection. Request to admit number 4 requests that the

defendant, Dana C. Reyes admit to an opinion. Also, request to admit number 4 requests that the defendant admit or deny information to which the defendant, Dana C. Reyes has no personal knowledge or information. Further, this request pertains to matters protected by the physician/patient privilege. Therefore, the defendant Dana C. Reyes, is unable upon reasonable inquiry to admit or deny the facts set forth in request to admit or deny number 4.

5. Objection. Request to admit number 5 requests that the defendant, Dana C. Reyes admit to an opinion. Also, request to admit number 5 requests that the defendant admit or deny information to which the defendant, Dana C. Reyes has no personal knowledge or information. Further, this request pertains to matters protected by the physician/patient privilege. Therefore, the defendant Dana C. Reyes, is unable upon reasonable inquiry to admit or deny the facts set forth in request to admit or deny number 5.

6. Objection. Request to admit number 6 requests that the defendant, Dana C. Reyes admit to an opinion. Also, request to admit number 6 requests that the defendant admit or deny information to which the defendant, Dana C. Reyes has no personal knowledge or information. Further, this request pertains to matters protected by the physician/patient privilege. Therefore, the defendant Dana C. Reyes, is unable upon reasonable inquiry to admit or deny the facts set forth in request to admit or deny number 6.

\*\*\*

8. Objection. Request to admit number 8 requests that the defendant, Dana C. Reyes admit to an opinion. Also, request to admit number 8 requests that the defendant admit or deny information to which the defendant, Dana C. Reyes has no personal knowledge or information. Further, this request pertains to matters protected by the physician/patient privilege. Therefore, the defendant Dana C. Reyes, is unable upon reasonable inquiry to admit or deny the facts set forth in request to admit or deny number 8."

The holding in *Szczeblewski v. Gossett*, 342 Ill. App. 3d 344, 349 (2003), on which both plaintiff and the majority rely, involves the examination of Illinois Supreme Court Rule 216, in light of a plaintiff's requests to admit. Szczeblewski questioned on appeal whether a Rule 216 request to admit could be used to establish the causal connection between a defendant's conduct and a plaintiff's injuries, the necessity and reasonableness of the medical services received by plaintiff, and the reasonableness of the cost of the medical services received by

plaintiff. The court found that all three requests dealt with facts that were proper subjects for a Rule 216 request to admit. *Szczeblewski*, 342 Ill. App. 3d at 348. The court also noted that " '[a]n answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that information known or readily obtainable by the party is insufficient to enable the party to admit or deny.' " *Szczeblewski*, 342 Ill. App. 3d at 349, quoting Fed. R. Civ. P. 36(a).

Plaintiff's claim in the instant case that defendant should have been required to respond to his requests is misleading because defendant did, in fact, answer the requests. Indeed, defendant's response closely parallels the language laid out by the *Szczeblewski* court. Her final answer to each of the requests is: "Therefore, the defendant Dana C. Reyes, is unable upon reasonable inquiry to admit or deny the facts set forth in request to admit or deny number 4[, 5, 6, 8]." The mere fact that defendant's answers contained the word "objection" does not negate the fact that she provided sufficient answers to plaintiff's requests.

In fact, under *Szczeblewski*, defendant could not have answered plaintiff's requests more thoroughly. She said that plaintiff was seeking an opinion, that she had no personal knowledge that would permit her to render the opinion, that the requests pertained to matters covered by the doctor/patient privilege, and that she could not answer upon reasonable inquiry.

The majority cites section 8—802 of the Code of Civil Procedure (735 ILCS 5/8—802(4) (West 2002)), which provides in pertinent part:

> "No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient, except only *** (4) in all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue ***."

All that section does is remove the legal barrier against any disclosure and allow the physician to give information under certain circumstances. It does not give a party to a lawsuit the right to simply call up the doctor (or therapist) and demand medical information about the opposing party. The disclosure of such information is gird with complex rules and regulations overseen and enforced by the courts pursuant to the rules of discovery.

As the court observed in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986):

> "The patient's implicit consent, however, is obviously and neces-

sarily limited; he consents only to the release of his medical information (relative to the lawsuit) pursuant to the methods of discovery authorized by Supreme Court Rule 201(a) [citation]. A patient certainly does not, by simply filing suit, consent to his physician discussing the patient's medical confidences with third parties outside court-authorized discovery methods, nor does he consent to his physician discussing the patient's confidences in an *ex parte* conference with the patient's legal adversary." (Emphasis omitted.) *Petrillo*, 148 Ill. App. 3d at 591, 499 N.E.2d at 959.

"Thus, when a patient files suit, the physician should be prepared to release those records relevant to the condition placed at issue, be available to give depositions, and be prepared to testify should he be called upon to do so. However, we also believe that the patient, because of the fiduciary relationship existing between him and his physician, should have the right to expect that his physician will provide the medical information sought by the patient's adversary pursuant only to court authorized methods of discovery." (Emphasis omitted.) *Petrillo*, 148 Ill. App. 3d at 595, 499 N.E.2d at 961.

In order to provide more specific information or more definitive answers to the requests to admit—which must be filed in 28 days—defendant would have to engage in fairly extensive and time-sensitive discovery of plaintiff's doctor and the administrative personnel of two—possibly three—medical facilities. She would probably also have to retain her own expert to examine the plaintiff, review the testimony of Dr. Eguro and the therapist before she could render the opinions sought in numbers 4, 5, and 8. It is highly unlikely that defendant could accomplish such a task within 28 days in light of the fact that Dr. Eguro was dead and the therapist was missing.

The majority also seems to suggest that, since defendant had plaintiff's medical records, she was in a position to draw medical conclusions from them. It is not the nature of our justice system to require one party to accept the untested, unsubstantiated conclusions from an opponent and adopt them without question as his or her own. See *Tsoukas v. Lapid*, 315 Ill. App. 3d 372, 380, 733 N.E.2d 823, 830 (2000) (holding cross-examination is a matter of right which allows a defendant to discover what potentially relevant information plaintiff's expert may have failed to consider in reaching an opinion).

The trial court has wide discretion concerning requests to admit. *Turner Investors v. Pirkl*, 338 Ill. App. 3d 676, 685 (2003). In its discretion, the trial court denied plaintiff's requests numbers 4, 5, 6 and 8. We should find the court did not abuse its discretion because defendant properly stated that she did not have the personal knowledge necessary to answer such requests, that the information she needs to answer further is subject to the physician/patient privilege, that she made

reasonable inquiry to obtain such knowledge, and that she is unable to admit or deny. Implicit within her answers is " 'that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.' " *Szczeblewski*, 342 Ill. App. 3d at 349, quoting Fed. R. Civ. P. 36(a). This response conforms with legal requirements.

Accordingly, I believe the trial court did not abuse its discretion in refusing to deem plaintiff's requests 4, 5, 6 and 8 admitted and I dissent from the majority's contrary determination on this issue.

*The Jury's Verdict Was Not Against the Manifest Weight of the Evidence*

Because I believe the trial court did not abuse its discretion in requiring certain medical opinions be redacted prior to publication to the jury and in refusing to deem plaintiff's requests admitted, I now turn my attention to plaintiff's assertion that the jury's verdict was against the manifest weight of the evidence.

In the verdict returned by the jury, the plaintiff was awarded a total amount of $1,681.76. $359.92 of that award was for medical expenses. This represented the expenses for the plaintiff's visit to the emergency room on the day of the accident. Plaintiff claims that since the medical expenses introduced totaled $4,052.30 the amount awarded by the jury is against the manifest weight of the evidence. To be against the manifest weight of the evidence the verdict, when viewed in a light most favorable to the nonmoving party, must so overwhelmingly favor the movant that no contrary verdict would stand. *State Farm Mutual Insurance Co. v. Ellison*, 354 Ill. App. 3d 387, 389 (2004). After a review of the record, it is clear that the verdict was not against the manifest weight of the evidence.

At trial, the plaintiff testified that since the accident he continues to experience pain in his neck and headaches. Then upon cross-examination, plaintiff testified that the injury was resolved by April 1994, six months after the accident. Evidence was also brought in showing that plaintiff told the police officer who arrived at the scene of the accident that he was not injured and did not need an ambulance. Only later, did plaintiff drive to the hospital on his own. Based on this testimony, the jury had to decide whether the plaintiff was injured and whether the treatment received was causally related to the accident. It is plausible that after deliberating, the jury determined that the plaintiff was not injured to the extent claimed and that other than the emergency room visit the treatment received was not causally related to the accident. Thus, I would hold that the jury's verdict was not against the manifest weight of the evidence and would therefore affirm the judgment of the circuit court of Will County.

For all of the foregoing reasons, I cannot agree with any of the conclusions reached by the majority and, therefore, dissent from them.